**F I L E D**
United States Court of Appeals
Tenth Circuit

**AUG 20 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MESA OIL, INC.,

      Plaintiff-Appellant,

v.

INSURANCE COMPANY OF
NORTH AMERICA,

      Defendant-Appellee,

and

INSURANCE ENVIRONMENTAL
LITIGATION ASSOCIATION,
Amicus Curiae.

No. 96-4034

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:95cv696C)**

Christopher Harris, Harris, Johnson & Stonecipher, Bozeman, Montana (Joanna Johnson, Harris, Johnson & Stonecipher assisted on the briefs), for Plaintiff-Appellant Mesa Oil, Inc.

Scott R. Hoyt, Gibson, Dunn & Crutcher, Dallas, Texas (Peter C. D'Apice and Thomas D. Boyle, Gibson, Dunn & Crutcher assisted on the briefs), for Defendant-Appellee Insurance Company of North America.

Laura A. Foggan, Wiley, Rein & Fielding, Washington, D.C. (Daniel E. Troy and Cherie L. Macauley, Wiley, Rein & Fielding assisted on the brief) for Amicus Curiae Insurance Environmental Litigation Association.

Before **EBEL, HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

This is a diversity case involving a dispute over insurance coverage. Mesa Oil, Inc. ("Mesa"), a New Mexico oil recycler, purchased Comprehensive General Liability ("CGL") policies from Insurance Company of North America ("INA")[1] for two one-year terms during the early 1980's. The policies contained general pollution exclusions as well as specific endorsements excluding from coverage liability resulting from the discharge of oil into bodies of water.

While it was insured by INA, Mesa sold used oil to Ekotek, a Utah oil recycler. Ekotek's facility in Utah was subsequently declared a Superfund site, and Mesa was identified by the EPA as a Potentially Responsible Party ("PRP"). Mesa entered a $193,000 settlement with the EPA as a de minimis responsible party, and later was sued by other PRP's for a greater contribution to the cleanup costs. Mesa then filed this action against INA seeking coverage for the $193,000 EPA settlement and a defense to the PRP suit. Upon INA's motion for summary

---

[1]The party defendant-appellee is Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America. For the purposes of this opinion, we refer to defendant-appellee as "INA," as that is what both parties have done both in their briefs and at oral argument.

judgment, the district court granted the motion on the basis of the pollution exclusion.

Mesa now appeals, claiming that the pollution exclusion was inapplicable on the facts of this case and that in any event INA had a duty to defend regardless whether it would in the end be required to indemnify Mesa for any liability incurred. Because we believe that, under New Mexico law, the pollution exclusion excludes coverage in this situation, we affirm.

### BACKGROUND

Between November 29, 1982 and March 1, 1984, Mesa Oil, Inc. ("Mesa"), an oil recycler based in Albuquerque, New Mexico, sold twelve shipments of lubricant feedstock processed from used oil to Ekotek, Inc., a Utah-based oil recycler. None of these shipments were transported by Mesa or its agents. The average volume of each shipment was 6,773 gallons. It was Mesa's understanding that, upon receiving the oil, Ekotek would refine it and resell it as automotive lubricants.

Ekotek mishandled oil at its Utah facility for many years, and this led to high levels of soil and groundwater contamination.[2] Eventually, the Ekotek

---

[2]We previously recounted the history of soil and groundwater contamination at the Ekotek site in Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1524-25 (10th Cir. 1995). In that opinion we detailed how from 1967 through 1985 Ekotek employees engaged in "numerous

(continued...)

facility was declared a Superfund site ("the Ekotek site") pursuant to the

Comprehensive Environmental Response Compensation and Liability Act of 1980

("CERCLA"), 42 U.S.C. § 9601-57. Under CERCLA, Potentially Responsible

Parties ("PRPs") are jointly and severally liable for cleanup and response costs.[3]

Mesa was identified by the EPA as one of the PRPs for the Ekotek site.

On May 20, 1994, the EPA offered Mesa what it characterized as a *de minimis* settlement to resolve Mesa's liability for oil contributed to the Ekotek site. According to a letter from the EPA describing the settlement, the offer was intended to permit Mesa to "resolve [its] liability through payment of a portion of the cleanup costs, in proportion to the waste [it] contributed." The terms of the settlement provided that EPA would release all claims against Mesa for the Ekotek site in exchange for $193,000. Mesa accepted the settlement on October 21, 1994.

---

[2](...continued)
incidents, accidents, and practices at the Ekotek Site which resulted in discharges of used oil and other contaminants." Id. at 1524. On appeal, Mesa does not challenge the description in Quaker State of the pollution events that occurred at Ekotek. However, it does argue that under New Mexico law the pollution must be evaluated from its perspective, and not from Ekotek's perspective.

[3]The statute imposes liability on "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607a(3).

On May 24, 1994, Mesa was named as a defendant in a lawsuit brought by a group of other PRPs known as the Ekotek Site PRP Committee.  That suit sought a contribution from Mesa toward the costs of investigation and cleanup at the Ekotek site.  According to the complaint, the plaintiffs had by the time the suit was filed already incurred $12,500,000 in cleanup costs.

After the PRP Committee suit was brought, Mesa notified INA that it was seeking a defense and indemnification for both the EPA and PRP Committee claims.  Between October 12, 1982 and October 12, 1984, a time period which coincided with the twelve Ekotek shipments, INA carried Mesa's General Comprehensive Liability ("CGL") insurance, which was purchased as two separate one-year policies and generally provided coverage for property damage or bodily injuries at Mesa's facilities or caused by Mesa's products, subject to certain exceptions.

Three clauses contained in both policies are relevant to this dispute.  First, each policy contained a clause setting out INA's scope of coverage:

> The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
>          A.  bodily injury or
>          B.  property damage
> to which this insurance applies, caused by an occurrence and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not

be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

(Aplt. App. at 51).

Second, each policy contained a standard clause known as a "pollution exclusion clause," which read as follows:

This insurance does not apply: . . . (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

(Aplt. App. at 51).

Third, each policy contained a supplementary oil exclusion, which reads as follows:

It is agreed that, if with respect to operations described in this endorsement there is a discharge, dispersal, release or escape of oil or other petroleum substance or derivative (including any oil refuse or oil mixed with wastes) into or upon any watercourse, body of water, bog, marsh, swamp or wetland, the insurance does not apply to bodily injury or property damage arising out of such discharge, dispersal, release or escape whether or not sudden and accidental.

(Aplt. App. at 59).

INA denied Mesa's request for coverage, claiming that under the pollution exclusion and the supplementary exclusion it was not obligated either to provide coverage or to defend Mesa against the EPA and PRP Committee actions. INA

recited evidence that discharges at the Ekotek site were gradual and continuous over many years, and that the pollution was the result of continuing business practices of Ekotek and others at that site. The record does not reflect that Mesa disputed these factual representations, although it did challenge the legal conclusion that the pollution exclusion and the supplementary exclusion applied to its claims. Mesa filed a complaint in New Mexico state court seeking coverage for the EPA settlement and a defense to the PRP Committee suit. INA, along with several other defendants who were then involved in the case, removed the action to the United States District Court for the District of New Mexico on the basis of diversity. The defendants then filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer the case to the District of Utah, which the New Mexico District Court granted.

INA then filed a motion for summary judgment, claiming that the pollution exclusion and supplementary exclusion precluded coverage for liability arising out of the Ekotek cleanup because the soil and groundwater contamination caused by Ekotek was not "sudden and accidental" within the meaning of those provisions, but rather was long-term, gradual and caused by the reckless and intentional activities of Ekotek.

The district court granted INA's motion for summary judgment in a decision rendered from the bench without a written opinion. The court found that

while no New Mexico court had interpreted the pollution exclusion, the pollution clause was unambiguous and applicable to the facts of this case. The court concluded that "a reasonable insured would not believe that it would be covered in a situation such as the one at hand." The court also concluded that INA had no duty to defend against the PRP Committee suit. The court did not address either the applicability of the supplementary exclusion or Mesa's contention that the oil it sold should not be considered "pollution" within the meaning of the general exclusion. Mesa now appeals. We have jurisdiction under 28 U.S.C. § 1291.[4]

## DISCUSSION

### Standard of Review

We review the grant or denial of summary judgment de novo, applying the standard applied by the district court pursuant to Fed. R. Civ. P. 56(c). Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). Under that standard, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. If the movant bears the burden of showing the absence of a

---

[4]INA is supported on appeal by amicus curiae Insurance Environmental Litigation Association, a trade association formed to present the position of the insurance industry in cases involving disputes over pollution-related insurance coverage.

genuine issue of material fact, the non-movant may not rest on its pleadings but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  Id.

## I.

### Was the Ekotek Liability Covered by Mesa's CGL Policy?

Mesa argues that the district court erred in granting summary judgment because: (1) the used oil it sold was not "pollution" within the meaning of the general pollution exclusion, and thus that exclusion does not apply in this situation; (2) from its perspective, the contamination at the Ekotek site was "sudden and accidental," and thus exempt even if the exclusion were applicable to the oil it sold; and (3) the specific oil exclusion prevails over the general pollution exclusion, and provides coverage in this situation.  In addition, Mesa argues that the district court erred in failing to find relevant provisions of the insurance policies ambiguous; in failing to consider representations by INA to the New Mexico Superintendent of Insurance concerning the scope of coverage; in failing to give adequate consideration to Mesa's reasonable expectations; and in failing to apply New Mexico's rules of interpreting insurance policies.

Although there are no New Mexico cases[5] interpreting the pollution exclusion, we note at the outset that there is a Tenth Circuit case on point applying Utah law. See Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522 (10th Cir. 1995). Quaker State also involved a distributor of used oil which was identified as a PRP for the Ekotek site and sought insurance coverage for CERCLA response costs in the face of an insurance policy that included the identical general pollution exclusion. Id. at 1524. We concluded that the oil sold by Quaker State was pollution; that the "sudden and accidental" exemption did not apply because the soil and groundwater contamination caused by Ekotek was long-term, gradual and caused by the reckless and intentional activities of Ekotek; and that whether the pollution was "sudden and accidental" should be viewed from the perspective of Ekotek and not from that of the distributor who sold the oil to Ekotek. Id. at 1530-31.[6]

---

[5]The parties both agree that New Mexico law applies to the interpretation of these insurance policies.

[6]We have also interpreted the pollution exclusion in several other cases. See Hartford Accident & Indem. Co. v. U.S. Fidelity & Guar. Co., 962 F.2d 1484 (10th Cir. 1992) (Utah law); Anaconda Minerals Co. v. Stoller Chem. Co., 990 F.2d 1175 (10th Cir. 1993) (Utah law); United States Fidelity & Guar. Co. v. Morrison Grain Co., 999 F.2d 489 (10th Cir. 1993) (Kansas law); Macklanburg-Duncan Co. v. Actual Cas. & Sur. Co., 71 F.3d 1526 (10th Cir. 1995) (Oklahoma law); Federated Mut. Ins. Co. v. Botkin Grain Co., 64 F.3d 537 (10th Cir. 1995) (Kansas law). In each of those cases we concluded that, under the applicable state law, the pollution exclusion clause was unambiguous and that the phrase "sudden and accidental" included a temporal requirement that the pollution occur

(continued...)

Mesa seeks to distinguish Quaker State, claiming that because New Mexico courts interpret insurance policies more liberally in favor of the insured than do Utah courts, a New Mexico court would be more likely than would a Utah court both to view the oil sold by Mesa as something other than pollution, and to interpret the "sudden and accidental" exemption broadly to provide coverage in this situation.

## A.

### The Scope of the Pollution Exclusion

Mesa argues that New Mexico courts would not apply the pollution exclusion to liability arising from its selling of oil because oil is its primary product. Under New Mexico law, "[a] policy exclusion is repugnant to an insuring clause 'when, rather than creating a specific exception to a broad grant of coverage, an exclusionary clause simply nullifies the grant.'" Western Heritage Ins. Co. v. Chava Trucking, Inc., 991 F.2d 656 (10th Cir. 1993) (quoting Federal Ins. Co. v. Century Fed. Sav. & Loan Ass'n., 824 P.2d 302, 309 (N.M. 1992)). Mesa contends that because oil was its primary product, liability arising from its selling of oil cannot be considered pollution under the pollution

---

[6](...continued)
quickly and abruptly.

exclusion. Otherwise, Mesa argues, the exclusion would eviscerate Mesa's coverage under the CGL as a whole. We disagree.

Mesa compares its situation to the facts of Ivy Nelson Grain Co. v. Commercial Union Ins. Co., 453 P.2d 587 (N.M. 1969). In that case, the insuring clause, inserted by typewriter, stated that the policy covered the "grain warehouse building and machinery, located at 115 1/3 North Front Street, Clayton, New Mexico." Id., at 588. However, the policy also had a "finely printed" and "obscure" endorsement which stated that the machinery was covered "only while contained in or attached to [the] building . . . ." Id. The insured suffered the loss of a movable grain loader which was often used inside the warehouse, but which was destroyed one night while it was parked outside. The New Mexico Supreme Court said that the insurance policy was ambiguous because of the conflict between the insuring clause and the exclusion. Id., at 589. To resolve the conflict, it applied the rules of construction that typed material prevails over printed material in a conflict and that ambiguities are construed against the insurer. Id.

Similarly, in Western Heritage, we interpreted a policy which had an automobile exclusion but also had a late-added endorsement that specifically added "truckmen" to the coverage of the policy. 991 F.2d at 654. We held that the terms of a later-added endorsement prevail over the terms in the policy itself

- 12 -

if the two are inconsistent. Id. at 654-55. We also held that the automobile exclusion would render the added coverage for truckmen a nullity. Id. Thus, we concluded that the automobile exclusion could not limit the coverage granted in the endorsement to truckmen. Id.

However, Ivy Nelson Grain and Western Heritage are not dispositive in this case because there is no "irreconcilable conflict" between the CGL policy as a whole and the pollution exclusion. Further, the interpretive guides offered in Ivy Nelson Grain and Western Heritage of preferring typed material over obscure printed material, preferring endorsements over the body of the contract, and reading exclusions so they do not render coverage a nullity have no controlling applicability here. The pollution exclusion contained in the INA policy does not eliminate all coverage arising out of Mesa's selling of oil, but only coverage for pollution that is not "sudden and accidental." Thus, for example, if either personal injury or property damage resulted from an exploding oil truck or a sudden and accidental oil spill on the ground, Mesa would clearly be covered. Similarly, the policy continues to provide Mesa with general liability coverage for most of the other kinds of liability that might arise in connection with its oil business, excluding certain categories of pollution liability. Clearly, the main thrust of the coverage was not rendered a nullity by the pollution exclusion provisions. Thus, Mesa is simply incorrect in asserting that the pollution

- 13 -

exclusion would eviscerate its coverage if it were to exclude its liability resulting from the pollution at the Ekotek site. In fact, Mesa's proposed interpretation would deprive the pollution exclusion of much of its meaning, since Mesa argues that exclusion should not apply to liability arising out of any oil-caused pollution, which is precisely the sort of pollution an oil reseller such as Mesa is most likely to experience. There is no basis in the language to give it the narrow reading that Mesa is advocating.

Mesa also argues that oil should not be considered pollution at all. Mesa's argument is without merit. The oil at the Ekotek site, which caused sufficiently severe soil and groundwater contamination that the facility was declared a Superfund site, was clearly both a "pollutant" and a "contaminant" within the meaning of the pollution exclusion. See Quaker State, 52 F.3d at 1524. The mere fact that oil is Mesa's primary product, and activities related to oil sales are the activities which Mesa sought to have covered by the CGL, does not mean that the oil sold by Mesa could not also become a pollutant for the purposes of the pollution exclusion once it was mishandled by Ekotek.

Thus, the pollution exclusion is applicable to Mesa's liability arising out of the soil and groundwater contamination of the Ekotek site. Applying the exclusion in this situation is not "repugnant" to the policy as a whole, because

Mesa retains coverage in a range of situations.  Further, the used oil dumped into the ground at the Ekotek facility is clearly a pollutant.

## B.

### The "Sudden and Accidental" Exemption

Mesa next argues that the pollution exclusion does not operate to bar coverage in this situation.  Under an exemption from the pollution exclusion, pollution which is "sudden and accidental" is covered by the policy.  Mesa argues that "sudden and accidental" should be viewed from the standpoint of the insured rather than that of the polluter, and that the phrase means only "unexpected and unintended."  INA counters that interpreting "sudden and accidental" to mean "unexpected and unintended" only  reflects the meaning of the word "accidental" and it would ignore the word "sudden." To give the term "sudden" some meaning, INA contends, it must be read to imply a temporal requirement, such that only pollution which occurs "quickly" and "abruptly" would be covered by the exemption.

New Mexico has not addressed the issue, and courts from other jurisdictions are divided on the proper interpretation of the pollution exclusion.  A number of courts have focused on the plain meaning of the word "sudden" in concluding that the term includes a temporal component, and thus that the exemption only applies to pollution that occurs quickly during an abrupt accident.

See, e.g., Quaker State, 52 F.3d at 1527-28; Sharon Steel Corp. v. Aetna Cas. & Sur. Co., 931 P.2d 127, 134-36 (Utah 1997); Northville Indus. v. National Union Fire Ins. Co., 679 N.E.2d 1044, 1047-49 (N.Y. 1997); North Pacific Ins. Co. v. Mai, 939 P.2d 570, 572 (Idaho 1997); E.I. du Pont de Nemours & Co. v. Allstate Ins. Co., 693 A.2d 1059, 1061 (Del. 1997); Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So. 2d 700, 706 (Fla. 1993); Lumbermans Mut. Cas. Co. v. Belleville Indus., 555 N.E.2d 568, 572 (Mass. 1990); Upjohn Co. v. New Hampshire Ins. Co., 476 N.W.2d 392, 397 (Mich. 1991); Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., 40 F.3d 146, 153-54 (7th Cir. 1994); Aeroquip Corp. v. Aetna Cas. & Sur. Co., 26 F.3d 893, 895 (9th Cir. 1994) (per curiam).

On the other hand, several state supreme courts, and a smaller number of federal courts, have read the exemption more broadly. See, e.g., Morton Int'l, Inc. v. General Accident Ins. Co., 629 A.2d 831, 870-76 (N.J. 1993); Queen City Farms v. Central Nat'l Ins. Co., 882 P.2d 703, 723 (Wash. 1994); Just v. Land Reclamation, Ltd., 456 N.W.2d 570 (Wis. 1990); Hecla Mining Co. v. New Hampshire Ins. Co., 811 P.2d 1083, 1091 (Colo. 1991); Clausen v. Aetna Cas. & Sur. Co., 380 S.E.2d 686, 688 (Ga. 1989). These courts conclude that the term "sudden" can also be read to mean "unexpected," and thus they apply the exemption to pollution that is long-term and gradual, so long as it is unexpected

and accidental from the viewpoint of the insured.  See North Pac. Ins. Co. v. Mai, 1995 WL 854735, at *9, (Idaho Dist. 1995), aff'd, 939 P.2d 570 (Idaho 1997).

Notwithstanding this split in authority, in Quaker State we recognized that the trend in this area is to read "sudden and accidental" as requiring that pollution must occur quickly and abruptly to be covered by the exemption.  52 F.3d at 1525-30.  Focusing on the plain language of the pollution exclusion, we concluded that the word "sudden" would be superfluous if it did not impose a temporal requirement on the exemption.  Additionally, we concluded that the plain language of the pollution exclusion precludes reading the exclusion from the standpoint of the insured:

> [T]he district court did not err when it viewed the discharges from the viewpoint of the actual polluter, i.e., Ekotek, as opposed to the viewpoint of Plaintiff to determine if the discharges were "sudden and accidental."  The pollution exclusion clause does not require that the insured make the "discharge, dispersal, release or escape" of contaminants.  Rather the plain language of the clause excludes coverage for "bodily injury or property damage arising out of the discharge" regardless of whether the insured actively caused or intended the discharge.  Thus, what the insured intends or foresees is of no consequence.

52 F.3d at 1530-31 (quotation omitted).

New Mexico, we believe, would conclude that the pollution at issue here does not fall within the "sudden and accidental" exemption.  First, a New Mexico court would likely honor the plain meaning of the word "sudden" and conclude that the term encompasses a temporal component, and thus that pollution must

- 17 -

occur quickly or abruptly before the exemption will apply. When an insurance policy is unambiguous, New Mexico courts "will not strain the words to encompass meanings they do not clearly express." Gonzales v. Allstate Ins. Co., 921 P.2d 944, 947-48 (N.M. 1996). The word "sudden" clearly expresses a meaning of quickness or abruptness, particularly in light of the fact that it would be entirely redundant when paired with the word "accidental" if it merely meant "unexpected."

Mesa does not argue on appeal that the pollution was "sudden and accidental" if viewed from the perspective of the polluter, Ekotek. However, Mesa argues that the pollution could be considered "sudden and accidental" if viewed from its (Mesa's) perspective. Mesa notes that its Ekotek liability arose out of twelve discrete transactions over a two year period. Mesa argues that it had no reason to believe that Ekotek would pollute its facility with the oil it received, and that it had no notice that it would be liable for that pollution until it received its notification of PRP status from the EPA.

However, as we noted in Quaker State, the plain language of the pollution exclusion is inconsistent with reading the exclusion from the standpoint of the insured. Quaker State, 52 F.3d at 1530-31 (concluding that the district court correctly viewed the damages from the viewpoint of the actual polluter, i.e., Ekotek, as opposed to the viewpoint of the distributer who sold the oil to Ekotek

- 18 -

and observing that "what the insured intends or foresees is of no consequence"). Moreover, as the First Circuit has noted, the CGL explicitly states that the definition of "occurrence" means "an accident . . . neither expected nor intended from the standpoint of the insured." A. Johnson & Co. v. Aetna Cas. & Sur. Co., 933 F.2d 66, 72 n. 9 (1st Cir. 1991) (emphasis added). Thus, when the policy was intended to evaluate facts from the perspective of the insured, it said so explicitly. There is no similar language in the "sudden and accidental" clause of the pollution exclusion.

Further, New Mexico law suggests that a New Mexico court would reject Mesa's argument that the pollution exclusion should be read from the standpoint of the insured. The New Mexico Supreme Court has flatly stated that it will enforce the plain language of insurance contracts. See Gonzales, 921 P.2d at 947-48. Mesa relies on a doctrine under which New Mexico courts enforce the "reasonable expectations of the insured" to resolve ambiguities in insurance contracts. Barth v. Coleman, 878 P.2d 319, 323 (N.M. 1994). However, the insured's expectations only come into play to resolve ambiguities once the court determines, based on the contract language together with any extrinsic evidence offered by the parties, that the contract is ambiguous. See Jaramillo v. Providence Wash. Ins. Co., 871 P.2d 1343, 1346-47 (N.M. 1994); see also C.R. Anthony Co. v. Loretto Mall Partners, 817 P.2d 238, 243 (N.M. 1991) (holding

- 19 -

that whether there is an ambiguity in a contract is a question of law for the court). In this case, the plain language of the pollution exclusion precludes coverage, and the district court determined that the extrinsic evidence offered by Mesa did not create an ambiguity. Thus, there was no need to resolve an ambiguity in favor of the insured. Here, if Mesa did harbor expectations that it was insured for the ongoing oil spillage at Ekotek's facility in Utah, such an expectation would not have been a reasonable one.

New Mexico courts generally allow a party to introduce extrinsic evidence of a contract's meaning to determine whether an ambiguity exists and how that ambiguity should be resolved, Barth v. Coleman, 878 P.2d 319, 323 (N.M. 1994); C.R. Anthony, 817 P.2d at 242-43. However, Mesa has not pointed to any extrinsic evidence that is sufficient to overcome the plain meaning interpretation of the pollution exclusion.

Mesa relies on the following statements by INA executives to state insurance regulators: "coverage would continue in cases where the pollutant or contaminant releases are the result of a sudden happening which the insured did not expect or intend," (Aplt. App. at 115); and "[w]e believe that we should not

afford coverage when conditions that are known to the insured as causes of pollution are permitted to continue," (Id.).[7]

Neither of these statements renders the pollution exclusion ambiguous. The second statement merely refers to one situation where the pollution exclusion would deny coverage, that in which the insured knows about a long-term pollution problem. Thus, that statement says nothing about the situation at issue here, where a long-term pollution problem not known to the insured is permitted to continue. Similarly, the first statement does not contradict the plain meaning of the pollution exclusion. This statement only indicates that coverage would continue for "sudden happening[s]" which the insured did not expect or intend. However, as we have previously indicated, the pollution involved here could not be regarded as "sudden." Thus, the extrinsic evidence offered by Mesa does not contradict the plain language of the pollution exclusion.[8]

Accordingly, we conclude that, under New Mexico law, Mesa's liability at the Ekotek site is excluded from coverage under the pollution exclusion.

---

[7]INA contends that the statements are unauthenticated and inadmissible hearsay. Since we do not find the statements to be relevant, we do not need to address either challenge.

[8]Mesa has also included in the record letters to the Iowa and Maryland insurance departments. However, as Mesa does not provide any evidence that these letters are relevant to the pollution exclusion as applied under New Mexico law, or even any evidence that the letters referred to the same policy language as is at issue here. Thus, those letters similarly are not shown to be relevant to the issue upon which summary judgment was granted.

## C.

## The Supplementary Exclusion

For the first time on appeal, Mesa argues that the specific oil exclusion prevails over the more general pollution exclusion. The oil exclusion provides:

> It is agreed that, if with respect to operations described in this endorsement there is a discharge, dispersal, release or escape of oil or other petroleum substance or derivative (including any oil refuse or oil mixed with wastes) into or upon any <u>watercourse, body of water, bog, marsh, swamp or wetland,</u> the insurance does not apply to bodily injury or property damage arising out of such discharge, dispersal, release or escape whether or not sudden and accidental.

(Aplt. App. at 59) (emphasis added). Because the supplementary exclusion only deals with the discharge of oil into various bodies of water, Mesa argues that by negative implication the discharge of oil into soil or groundwater is covered under the CGL policy.

In the district court, Mesa argued that the supplementary exclusion was not a part of the insurance policy. (Aplt. App. at 11-12) As a general rule, we do not consider issues on appeal that were not raised below. <u>In re Walker</u>, 959 F.2d 894, 896 (10th Cir. 1992). Accordingly, Mesa has waived its opportunity to rely on the interpretation of the oil exclusion that it now advances.

## II.

## The Duty to Defend

Regardless of whether the pollution exclusion bars coverage for the Ekotek liability, Mesa argues that the insurance policy imposed on INA a duty to defend that is broader than the duty to indemnify. The duty to defend clause provides that INA has "the right and duty to defend any suit against the insured" seeking to recover damages on account of property damage. (Aplt. App. at 51)

Under New Mexico law, the duty to defend is independent from the duty to indemnify, and requires the insurer to provide coverage "'when the complaint filed by the claimant alleges facts potentially within the coverage of the policy.'" Western Heritage, 991 F.2d at 656 (quoting Foundation Reserve Ins. Co. v. Mullenix, 642 P.2d 604, 605-06 (N.M. 1982)). Because we do not believe Mesa's claim was "potentially within the scope of its insurance coverage, we conclude that INA did not breach its duty to defend in refusing to provide Mesa a defense to the Ekotek lawsuits."

We have concluded that a New Mexico court would honor the "plain meaning" of the pollution exclusion and find that the CGL policy does not provide coverage in this situation. Other courts that have reached this conclusion have also concluded that the insurer did not breach its duty to defend. See, e.g., Quaker State, 868 F. Supp. at 1332-33 (holding that once coverage was barred by

- 23 -

pollution exclusion, duty to defend could not be invoked).  Moreover, under New Mexico law, no duty to defend arises when the claim "clearly falls" outside the coverage provided by the policy.  Bernalillo County Deputy Sheriffs Ass'n v. County of Bernalillo, 845 P.2d 789, 791 (N.M. 1992).  Because we have concluded that the "plain meaning" of the insurance contract does not provide coverage in this situation, we also believe that Mesa's claim "clearly falls" outside the coverage provided by the policy.  Thus, INA had no duty to defend Mesa's claims.

INA also argues that the duty to defend does not apply here because the EPA settlement is not a "suit," and CERCLA response costs are not "damages," within the meaning of that provision.  Because we conclude that the Ekotek liability was covered by the pollution exclusion, and that no duty to defend on the part of INA arose in this situation, we need not address these issues.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court.

- 24 -