OPINION CASTILLO, Chief Judge. {1} The United Nuclear Corporation (UNC) was sued for discharging pollutants in the course of its mining operations. Allstate Insurance Company (Allstate) provided UNC comprehensive liability insurance. Under the policies Allstate issued UNC, property damage or personal injury caused by pollution was excluded from coverage, unless such pollution was “sudden and accidental.” The issue before us is whether the liabilities arising from UNC’s pollution discharges are excluded or fall within the “sudden and accidental” exception to the exclusion. We interpret the terms “sudden” and “accidental” by their plain and ordinary meanings and conclude that the liabilities for which UNC sought coverage are excluded because the pollution discharges that gave rise to those liabilities were neither sudden nor accidental. The district court’s decision granting Allstate’s motion for partial summary judgment is affirmed. I. BACKGROUND {2} UNC operated a number of mines in New Mexico in the 1970s and 1980s. To protect itself from liabilities arising from its mining operations, UNC purchased umbrella liability insurance policies from two former subsidiaries of Allstate, both of which are now defunct. Allstate is the successor-in-interest to those policies. {3} The Allstate policies provide indemnity “for damages on account of ... Personal Injuries ... [and] Property Damage ... caused by or arising out of each Occurrence happening anywhere in the world.” Each policy also includes a “qualified pollution exclusion” stating that the policy shall not apply to Personal Injury or Property Damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.] {4} This case commenced when Santa Fe Pacific Gold, a mineral lessor at one of UNC’s mines, sued UNC for environmental damages. UNC sought indemnification from Allstate under the Allstate policies. Allstate denied coverage. UNC then filed a third-party complaint in district court asking for a declaratory judgment determining Allstate’s duty to defend and indemnify. {5} In response, Allstate moved for partial summary judgment. Allstate argued that UNC’s claims were barred under the qualified pollution exclusion clause because its claims were for personal injury or property damage arising out of pollution discharges. Allstate acknowledged that the “sudden and accidental” exception to the qualified pollution exclusion clause could restore UNC’s coverage, but asserted that coverage could be restored under this exception only if UNC’s pollution discharges were both “sudden and accidental.” Allstate asked the district court to interpret “sudden” as meaning “ ‘quick,’ ‘abrupt’ or otherwise a temporarily short period of time” and to define “accidental” as meaning “unintended, unexpected, or by chance.” So defined, Allstate claimed that coverage could not be restored as UNC’s pollution discharges were part of UNC’s regular business practices, occurred over the course of many years, and, thus, were not sudden. {6} UNC opposed Allstate’s partial motion for summary judgment and argued that there are disputed material questions of fact regarding the meaning of the terms in the Allstate policies and that there is a dispute regarding the expectations of the parties concerning pollution coverage under the policies. UNC further argued that the term “sudden” should be interpreted to mean “unintended” or “unexpected” and argued that the exception to the qualified pollution exclusion clause should be interpreted to cover gradually occurring pollution events. In the alternative, UNC argued that the term “sudden” should be deemed ambiguous. {7} The district court concluded that the terms “sudden” and “accidental” are unambiguous, and should be given their plain meanings. Adopting Allstate’s proposed definitions, the district court determined that “ ‘sudden’ means quick, abrupt or otherwise a temporarily short period of time” and that “ ‘accidental’ means unintended, unexpected!;,] or by chance.” As authority for its decision, the district court relied on Mesa Oil, Inc. v. Insurance Company of North America, 123 F.3d 1333, 1339-41 (10th Cir. 1997). Having construed the disputed terms, the district court then concluded that coverage was excluded, that coverage was not restored by the “sudden and accidental” exception in light of the nature of the pollution discharges, and dismissed UNO’s third party complaint with prejudice. UNC appeals. II. DISCUSSION {8} On appeal, UNC makes the same arguments it presented to the district court. First, it argues that the district court erred in defining the term “sudden” by its ordinary meaning and asks us to vacate the district court’s order on partial summary judgment and hold that the term “sudden” has no temporal connotation. In the alternative, UNC argues that the term “sudden” is ambiguous and, thus, summary judgment was precluded. UNC next argues that Allstate is estopped from asserting that the Allstate policies do not cover gradually occurring environmental liabilities. UNC then argues that the district court improperly ruled on factual matters outside the scope of Allstate’s partial motion for summary judgment. Finally, UNC argues that the district court’s order deprived UNC of a fair hearing on Allstate’s duty to defend. We address each argument in turn. A. Standard of Review {9} “Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.” Self v. United Parcel Serv., Inc., 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. The material facts in this case are not in dispute. We review legal conclusions below under a de novo standard. Id.; Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 60, 123 N.M. 752, 945 P.2d 970 (“The interpretation of an insurance contract is a matter of law about which the court has the final word.”). B. Interpretation of the Term “Sudden” {10} UNC argues that the district court improperly interpreted the term “sudden” in the “sudden and accidental” provision. According to UNC, the term “sudden” does not mean quick, abrupt, or otherwise a temporarily short period of time. Rather, UNC claims, the term should be defined as having no temporal connotation and is synonymous with the term “unexpected.” As support for this contention, UNC relies on extrinsic evidence in the summary judgment record regarding the insurance industry’s statements concerning the meaning of the term and what UNC refers to as the drafting history of the qualified pollution exclusion clause. {11} “[I]nsurance contracts are construed by the same principles which govern the interpretation of all contracts.” Rummel, 1997-NMSC-041, ¶ 19, 123 N.M. 752, 945 P.2d 970 (internal quotation marks and citation omitted). Our primary goal when interpreting contract provisions is to ascertain “the intentions of the contracting parties with respect to the challenged terms at the time they executed the contract.” Ponder v. State Farm Mut. Auto. Ins. Co., 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (internal quotation marks and citation omitted). “When discerning the purpose, meaning, and intent of the parties to a contract, the court’s duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties.” Id. (internal quotation marks and citation omitted). “We consider the plain language of the relevant provisions, giving meaning and significance to each word or phrase within the context of the entire contract, as objective evidence of the parties’ mutual expression of assent.” H-B-S P’ship v. Aircoa Hospitality Servs., Inc., 2005-NMCA-068, ¶ 19, 137 N.M. 626, 114 P.3d 306. “When language contained in a policy is unambiguous, we will not strain the words to encompass meanings they do not clearly express.” Gonzales v. Allstate Ins. Co., 122 N.M. 137, 141, 921 P.2d 944, 948 (1996). Contractual provisions in insurance policies must be interpreted in their usual, ordinary, and popular sense. Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111. {12} The district court’s interpretation of the term “sudden” was based on its conclusion that the term is ordinary and unambiguous. As authority for this conclusion, the district court cited and adopted the reasoning and holding of Mesa Oil, a Tenth Circuit case construing and applying New Mexico law to resolve a dispute over the applicability of a qualified pollution exclusion clause nearly identical to the one contained in the Allstate policies. Mesa Oil, 123 F.3d at 1339-41. As we explain below, Mesa Oil is factually analogous to the present matter and the Tenth Circuit’s reasoning and analysis are persuasive. {13} Mesa Oil, an oil recycler, sought indemnification from its insurer for liabilities arising from the activities of a third party with which it did business. Id. at 1335. The third party had gradually and continuously discharged pollutants in the regular course of its business and, as a result of this conduct, Mesa Oil faced significant liabilities as a potentially responsible party under federal superfund law. Id. at 1335-36. Mesa Oil’s comprehensive liability insurance “provided coverage for property damage or bodily injuries ... subject to certain exceptions.” Id. at 1335. One such exception was a qualified pollution exclusion which provided that Mesa Oil’s insurance policy did not apply to “bodily injury or property damage arising out of the discharge [of] ... pollutants.” Id. at 1336. As is the case in the present matter, the pollution exclusion clause in Mesa Oil’s policies contained a “sudden and accidental” exception which stated that the “exclusion does not apply if such discharge ... is sudden and accidental.” Id. Mesa Oil and its insurer disputed the meaning of the terms “sudden” and “accidental” and the applicability of the exception. Id. at 1336-37. {14} The Tenth Circuit resolved the dispute in favor of the insurer, concluding that the exclusion applied, that the “sudden and accidental” exception to the exclusion was inapplicable, and that Mesa Oil was not entitled to coverage for the liabilities for which it sought coverage. Id. at 1339^41. This conclusion was based on the court’s assessment of how a New Mexico court would interpret the terms “sudden” and “accidental” and on the fact that Mesa Oil’s liabilities derived from gradual and ongoing pollution discharges. Id. at 1336, 1339-41. The Tenth Circuit explained that “[wjhen an insurance policy is unambiguous, New Mexico courts will not strain the words to encompass meanings they do not clearly express.” Id. at 1340 (internal quotation marks and citation omitted). The Court concluded that the term “sudden” is unambiguous and clearly expresses a meaning of quickness or abruptness and encompasses a temporal component. Id. As applied, the exception to the exclusion was inapplicable as gradual pollution is not sudden. Id. We agree with the Tenth Circuit’s assessment of New Mexico law and its conclusions regarding the meaning of the term “sudden.” C. Ambiguity {15} UNC has submitted a number of arguments to support its contention that the term “sudden” is ambiguous and that the district court erred in failing to acknowledge as much. The dissent agrees with these arguments and accepts UNO’s position that the term is ambiguous. We are not persuaded. Before we examine those arguments, we observe that the district court admitted substantial extrinsic evidence to evaluate the question of ambiguity. Indeed, it is this very evidence which UNC cites as the basis for its arguments. {16} UNC first points out that there are multiple definitions of the term “sudden” in dictionaries. However, the fact that various definitions of a term can be found in dictionaries does not suffice to create ambiguity. New Castle County v. Hartford Accident & Indem. Co., 933 F.2d 1162, 1193 (3d Cir.1991), abrogated on other grounds by Northern Ins. Co. of N. Y. v. Aardvark Assoc., Inc., 942 F.2d 189, 193 (3d Cir.1991); Fireman’s Fund Ins. Cos. v. Ex-Cell-O Corp., 702 F.Supp. 1317, 1324 (E.D.Mich. 1988). {17} Second, UNC emphasizes that there is disagreement about the meaning of the term “sudden” in jurisdictions which have interpreted “sudden and accidental” clauses like the one at issue here. This Court has previously recognized that “[a] split in legal authority may be indicative of an ambiguity in the policy, but does not establish one.” Davis v. Farmers Ins. Co. of Ariz., 2006-NMCA-099, ¶ 7, 140 N.M. 249, 142 P.3d 17. We are guided here by New Mexico case law on contract interpretation, not the conclusions reached by other courts in other jurisdictions. As described above, plain and ordinary terms are given their usual meanings and we do not “strain or torture the language of an insurance policy to create an ambiguity.” State Farm Mut. Auto. Ins. Co. v. Luebbers, 2005-NMCA-112, ¶ 9, 138 N.M. 289, 119 P.3d 169 (internal quotation marks and citation omitted). {18} Third, UNC argues that, unless the term “sudden” is interpreted in the manner UNC proposes — as synonymous with the term “unexpected” — Allstate’s policy is “hopelessly conflicting in purpose and scope.” We disagree with this overly broad assertion. Under the interpretation we adopt, the exemption to the pollution exclusion clause would restore coverage for pollution that is both abrupt and accidental. This interpretation does not render the pollution exclusion clause hopelessly conflicting. Rather, we are far more troubled by UNC’s contention that “sudden” is synonymous with “unexpected.” Were we to adopt this view, the exemption would be needlessly redundant: the exemption would restore coverage for unexpected accidents. See Mesa Oil, 123 F.3d at 1340 (“The word ‘sudden’ clearly expresses a meaning of quickness or abruptness, particularly in light of the fact that it would be entirely redundant when paired with the word ‘accidental’ if it merely meant ‘unexpected.’ ”). By definition, all accidents are “unexpected.” Our rules of contract construction preclude us from construing language in a manner that creates such redundancies. Rummel, 1997-NMSC-041, ¶ 27, 123 N.M. 752, 945 P.2d 970. {19} Finally, UNC relies on the drafting history of the qualified pollution exclusion and the insurance industry’s definition of the term “sudden” as grounds for the contention that the term is ambiguous and summary judgment wrongly granted. However, as we explain below, our well defined rules of contract interpretation do not allow us to delve into the drafting history or the insurance industry’s understanding of the term. {20} When interpreting terms within insurance policies “our focus must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured, who, we assume, will have limited knowledge of insurance law.” Computer Corner, Inc. v. Fireman’s Fund Ins. Co., 2002-NMCA-054, ¶ 7, 132 N.M. 264, 46 P.3d 1264. “Specialized knowledge of the insurance industry case law, academic treatments, and industry norms or standards should not enter into the inquiry.” Berry v. Fed. Kemper Life Assurance Co., 2004-NMCA-116, ¶ 61, 136 N.M. 454, 99 P.3d 1166. UNC and the dissent err to the extent they emphasize and rely upon the drafting history of the pollution exclusion clause and the insurance industry’s understanding of terms therein. As stated, our point of reference is the hypothetical reasonable insured. The hypothetical reasonable insured with limited knowledge of insurance law would understand the word “sudden” to mean what it ordinarily means: quick, abrupt, or a temporarily short period of time. {21} As we stated previously, the primary goal in contract interpretation is to ascertain and enforce the intent of the parties. Ponder, 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960. The starting point in determining the parties’ intent is the plain language of the agreement and the ordinary meaning of any unambiguous terms therein. See Battishill, 2006-NMSC-004, ¶ 13, 139 N.M. 24, 127 P.3d 1111 (concluding that, when the terms used in an insurance policy have a common and ordinary meaning, that meaning controls in determining the intent of the parties); see also Gonzales, 122 N.M. at 140-41, 921 P.2d at 947-48 (adopting the plain meaning of the term “bodily injury” for purposes of interpreting an insurance policy and observing that courts will enforce the plain language of insurance contracts and will not strain the meaning of words where they are otherwise clear); 2 Steven Plitt et al., Couch on Insurance § 21:1 (3d ed. 2010) (describing the analytical steps courts take in ascertaining the meaning of terms and conditions in an insurance policy and stating that a court will first determine whether the terms at issue are defined in the policy or have a meaning that is plain on its face). In our view, UNC and the dissent incorrectly bypass this crucial step and err in doing so. We need not rely on extrinsic evidence to define a term that has a readily discernible and plain meaning. As the Tenth Circuit recognized in Mesa Oil, we will not strain to define “sudden,” which we conclude is an ordinary and unambiguous word. 123 F.3d at 1340. We reject UNC’s assertion that the district court erred in defining the term “sudden.” D. Estoppel {22} UNC next contends that Allstate is estopped from asserting that the Allstate policies do not cover gradually occurring environmental liabilities. UNC dedicates only two pages of its brief-in-chief and two pages of its reply brief to this issue. In our view, UNC has failed to adequately explain this argument. UNC failed to identify the elements of a claim for regulatory estoppel or explain how it is applicable here. Rather, UNC merely argues that courts in other jurisdictions have applied estoppel under similar circumstances. This line of argument is insufficiently specific. Headley v. Morgan Mgmt. Corp., 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (asserting that the appellate courts of New Mexico need not entertain inadequately developed arguments). E. The Scope of the Matters Raised by the Parties {23} UNC argues that the district court improperly ruled on fact issues not raised by the parties on summary judgment and, in so ruling, violated UNC’s due process rights. Specifically, UNC argues that the district court erroneously concluded as a matter or law that UNC engaged in “bad business practices.” UNC also argues that the district court failed to “consider the language in the underlying [Travelers] policies on summary judgment.” We address those two issues in order. {24} The district court did not conclude as a matter of law that UNC engaged in bad business practices. The district court referenced UNC’s business practices in the course of addressing UNC’s contention that the term “sudden” must mean unexpected and not quick or abrupt because Allstate was aware of UNC’s activities and nonetheless chose to insure UNC. The district court responded that this contention was implausible because, in the district court’s view, no insurer would issue insurance coverage for “bad” business practices which are known to be insurance liabilities. Moreover, this argument has no bearing on whether a genuine issue of material fact precludes summary judgment. {25} Turning to UNC’s second argument, UNC claims that certain provisions in a Travelers Insurance policy that underlies the Allstate policies “create additional questions of fact.” As Allstate points out, UNC failed to submit the Travelers insurance policies into the record proper and has not cited the actual provisions this argument is premised on. UNC instead relies on an expert’s description of the provisions in the Travelers policy and another single page document that Alstate describes as a 1981 Travelers underwriting pricing guide. “Where the record on appeal is incomplete, the ruling of the [district] court is presumed to be supported by the evidence.” Michaluk v. Burke, 105 N.M. 670, 676-77, 735 P.2d 1176, 1182-83 (Ct.App. 1987). {26} A court may grant summary judgment sua sponte so long as there are no genuine issues of material fact in dispute. Martinez v. Logsdon, 104 N.M. 479, 483, 723 P.2d 248, 252 (1986). In the context of deciding the motion for partial summary judgment, the district court concluded that no genuine issues of material fact existed and that its decision was conclusive as to UNC’s entitlement to coverage under the Alstate policies. We see no error in this ruling and no violation of UNC’s due process rights. F. Duty to Defend {27} Finally, UNC argues that the district court’s dismissal of its claims against Allstate deprived UNC of a fair hearing on Allstate’s duty to defend UNC. The insurance policies provide “that with respect to any Occurrence covered only by the terms and conditions of this policy ... [Alstate] shall defend any suit against [UNC] alleging such injury, sickness, disease},] or destruction and seeking damages on account thereof!.]” However, an insurer does not have a duty to defend the insured if the injured party’s allegations “clearly fall outside the provisions of the policy.” Bernalillo County Deputy Sheriffs Ass’n v. County of Bernalillo, 114 N.M. 695, 698, 845 P.2d 789, 792 (1992). UNO’s allegations clearly fall outside the scope of the policy as the activities for which UNC sought coverage are excluded from coverage and are not both sudden and accidental. III. CONCLUSION {28} We affirm the district court’s summary judgment order and remand the case for proceedings consistent with this opinion. {29} IT IS SO ORDERED. I CONCUR: RODERICK T. KENNEDY, Judge. MICHAEL E. VIGIL, Judge (dissenting).