# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-032

Filing Date: August 23, 2012

Docket No. 32,939

UNITED NUCLEAR CORPORATION,

Plaintiff-Petitioner,

v.

ALLSTATE INSURANCE COMPANY,

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Louis E. DePauli, Jr., District Judge**

Comeau, Maldegen, Templeman & Indall, L.L.P.
Michael R. Comeau
Jon J. Indall
Stephen J. Lauer
Santa Fe, NM

McCarter & English, L.L.P.
Arnold L. Natali, Jr.
J. Wylie Donald
Newark, NJ

for Petitioner

Civerolo, Gralow, Hill & Curtis, P.A.
William P. Gralow
Lisa Entress Pullen
Albuquerque, NM

Troutman Sanders LLP
Louise M. McCabe
San Diego, CA

Troutman Sanders LLP

1

Charles I. Hadden
Stephanie T. Schmelz
Washington, DC

for Respondent

Montgomery & Andrews, P.A.
J. Brent Moore
Lara Katz
Santa Fe, NM

Wiley Rein LLP
Laura A. Foggan
Santa Fe, NM

for Amicus Curiae Complex Insurance Claims Litigation Association

Sawtell, Wirth & Biedscheid, P.C.
W. Anthony Sawtell
Santa Fe, NM

for Amici Curiae County of Doña Ana, City of Las Cruces and The Association of
Commerce & Industry of New Mexico

## OPINION

**SERNA, Justice.**

**{1}** This appeal turns on our construction of a single word, "sudden," within a pollution exclusion clause in a series of liability insurance policies barring coverage for certain damages unless the events causing those damages were "sudden and accidental"—an issue of first impression in New Mexico, although one already considered by numerous courts in other jurisdictions. Concluding that "sudden" lacks a single clear meaning, we reverse the Court of Appeals' holding that the word unambiguously signifies "quick, abrupt, or a temporarily short period of time." *United Nuclear Corp. v. Allstate Ins. Co.*, 2011-NMCA-039, ¶ 20, 149 N.M. 574, 252 P.3d 798. Under well-established principles of insurance law, we construe this ambiguity in favor of the insured, Petitioner United Nuclear Corporation (United Nuclear), and interpret the term "sudden" in the insurance policies at issue in this dispute to mean "unexpected." We remand to the district court for further proceedings consistent with this Opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

**{2}** United Nuclear operated several uranium mines in New Mexico from the 1960s

through the early 1980s, one of which was the Northeast Church Rock Mine (Church Rock Mine) in McKinley County. Although the parties do not mention this fact in their briefs, in July 1979, a breach opened in a dam at the Church Rock Mine and about 94 million gallons of radioactive liquid escaped from a tailings pond and poured into the nearby Rio Puerco. *See United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 482, 709 P.2d 649, 651 (1985). This spill was "the largest accidental release of radioactive material in U.S. history." Judy Pasternak, *Yellow Dirt: An American Story of a Poisoned Land and a People Betrayed* 150 (Free Press 2010). Remediation of the area around the Church Rock Mine continues to this day. *See* U.S. Envtl. Prot. Agency, EPA Seeks Comment on the Surface Soil Proposed Plan for the United Nuclear Corporation Superfund Site, 4-5,July 2012, available at http://www.epa.gov/region6/6sf/pdffiles/unc_pplan_fs_7-16-2012.pdf (last visited August 20, 2012). Although these facts do not affect the narrow issue of insurance policy interpretation presented here, they help make tangible the dispute underlying this appeal.

**{3}** To insure its mining operations, United Nuclear obtained commercial general liability and umbrella liability insurance policies from a number of carriers, including the polices relevant to this dispute (the Policies), which were issued by two predecessor corporations of Respondent Allstate Insurance Company (Allstate). Together, the Policies were in effect between August 1, 1977 and June 1, 1981.

**{4}** United Nuclear either incurred actual costs or was exposed to potential liability for environmental contamination resulting from its mining operations through several different proceedings. Those proceedings included a 1996 lawsuit filed by the New Mexico Mining Commission ultimately requiring United Nuclear to remediate three of its mines (including the Church Rock Mine), *see N.M. Mining Comm'n v. United Nuclear Corp*., 2002-NMCA-108, ¶ 1, 133 N.M. 8, 57 P.3d 862; a 1997 lawsuit that the mineral lessor at the Church Rock Mine filed in state district court over environmental damage caused by United Nuclear's "mining and disposal practices"; notices in 2002 and 2004 from the New Mexico Environment Department requiring United Nuclear to abate excess use of water at two of its mines (including the Church Rock Mine); notices of claim from the United States Forest Service in 2001 holding United Nuclear responsible for environmental remediation at two of the sites; and an investigation by the Environmental Protection Agency into "alleged radiation claims on Indian lands adjacent to the [Church Rock] mine." United Nuclear tendered the defense and indemnity of the two lawsuits to Allstate in 1997, and notified Allstate about the administrative notices and determinations in 2002 and 2004. Allstate denied any duty to United Nuclear with respect to the tendered claims.

**{5}** United Nuclear ultimately filed a third-party complaint in the 1997 lawsuit filed by the mineral lessor, seeking a declaration that Allstate and various other insurers are required to defend and indemnify United Nuclear in the underlying suit. By April 2005, United Nuclear had amended the third-party complaint to seek declaratory relief against Allstate and the other insurers for all of its actual and potential liabilities mentioned above.

**{6}** In February 2006, Allstate moved for summary judgment on the sole ground that the

3

Policies contain an exclusion clause removing from coverage all claims for damages caused by pollution or contamination unless the underlying discharges were "sudden and accidental." Allstate further asserted that the term "sudden" as used in the Policies connotes an abrupt event or events, and because the discharges that lead to the contamination at United Nuclear's mines occurred over a period of years, those events were not "sudden" and thus are excluded from coverage.

**{7}** In October 2008, the district court granted Allstate's motion. The court found "the word 'sudden' and the word 'accidental' . . . [to be] clear and unambiguous . . . . The word 'sudden' means quick, abrupt or otherwise a temporarily short period of time. . . . The word 'accidental' means unintended, unexpected or by chance." United Nuclear appealed the district court's determination to the Court of Appeals. In its opinion, a divided panel upheld the district court's grant of summary judgment to Allstate on the meaning of "sudden" as used in the Policies' pollution exclusion clause. *United Nuclear*, 2011-NMCA-039, ¶¶ 1, 14, 21, 28.

**{8}** As the district court had done, the Court of Appeals relied heavily on the reasoning and holding of *Mesa Oil, Inc. v. Ins. Co. of North America*, 123 F.3d 1333, 1339-41 (10th Cir. 1997). *United Nuclear*, 2011-NMCA-039, ¶¶ 7, 12-14. In *Mesa Oil*, the Tenth Circuit acknowledged an absence of New Mexico case law interpreting the term "sudden," but surmised that New Mexico courts "would likely honor the plain meaning of the word 'sudden' and conclude that the term encompasses a temporal component." *Mesa Oil*, 123 F.3d at 1340. The court concluded that "[t]he word 'sudden' clearly expresses a meaning of quickness or abruptness, particularly in light of the fact that it would be entirely redundant when paired with the word 'accidental' if it merely meant 'unexpected.'" *Id.*

## II.   STANDARD OF REVIEW

**{9}** This Court reviews de novo an order granting or denying summary judgment. *See Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. Summary judgment should be granted "only when there are no issues of material fact, with the facts viewed in the light most favorable to the non-moving party." *Summers v. Ardent Health Servs., L.L.C.*, 2011-NMSC-017, ¶ 10, 150 N.M. 123, 257 P.3d 943. Similarly, the interpretation of terms within an insurance policy is "a matter of law about which the court has the final word," *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 60, 123 N.M. 752, 945 P.2d 970, and is subject to de novo review, *Battishill v. Farmers Alliance Ins. Co.*, 2006-NMSC-004, ¶ 6, 139 N.M. 24, 127 P.3d 1111.

## III.   DISCUSSION

### A.   Analytical Principles

#### 1.   Ambiguities Construed Against The Insurer

4

**{10}** As with other contracts, where an insurance policy's terms "have a common and ordinary meaning, that meaning controls in determining the intent of the parties." *Id.* ¶ 13. Reviewing courts should not "create ambiguity where none exists, and an ambiguity does not exist merely because the parties hold competing interpretations" about the meaning of a policy provision. *City of Santa Rosa v. Twin City Fire Ins. Co.*, 2006-NMCA-118, ¶ 7, 140 N.M. 434, 143 P.3d 196 (citing *Battishill*, 2006-NMSC-004, ¶ 17). But where a policy term is "reasonably and fairly susceptible of different constructions," it is deemed ambiguous and "must be construed against the insurance company as the drafter of the policy." *Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992). Insurance policies almost always are contracts of adhesion, meaning that "the insurance company controls the language" and "the insured has no bargaining power." *Cal. Cas. Ins. Co. v. Garcia-Price*, 2003-NMCA-044, ¶ 20, 133 N.M. 439, 63 P.3d 1159; *accord Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 14 n. 3, 133 N.M. 661, 68 P.3d 901. As this Court explained in *Sanchez v. Herrera*,

> [t]he typical insured does not bargain for individual terms within policy clauses; the insured makes only broad choices regarding general concepts of coverage, risk, and cost. Not only does the insurance company draft the documents, but it does so with far more knowledge than the typical insured of the consequences of particular words.

109 N.M. 155, 159, 783 P.2d 465, 469 (1989).

**{11}** Cognizant of this imbalance in power, "as a matter of public policy" courts "generally construe[]" ambiguities "in favor of the insured and against the insurer." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 26, 129 N.M. 698, 12 P.3d 960; *see also* 2 Steven Plitt et al., *Couch on Insurance* § 22:14 (3d ed. 2010). Where a term in an insurance policy is found to be ambiguous, "[t]he court's construction of [the] policy will be guided by the reasonable expectations of the insured." *Rummel*, 1997-NMSC-041, ¶ 22; *see also Phx. Indem. Ins. Co. v. Pulis*, 2000-NMSC-023, ¶ 23, 129 N.M. 395, 9 P.3d 639 (quoting *W. Commerce Bank v. Reliance Ins. Co.*, 105 N.M. 346, 348, 732 P.2d 873, 875 (1987)) ("[T]he test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean."). Finally, "[i]t is unnecessary to show that a construction against the insurer is more logical than a construction against the insured," so long as both constructions are reasonable. 2 Plitt, *supra*, § 22:17, at 22-98 to 22-99.

### 2. Consideration of Extrinsic Evidence in Assessing Ambiguity

**{12}** Because the Court of Appeals' majority opinion held the term "sudden" to have a plain and unambiguous meaning, it did not consider extrinsic evidence necessary to resolve the appeal. *United Nuclear*, 2011-NMCA-039, ¶ 21. In the dissent's view, though, various factors, discussed below, support a finding of ambiguity, and "the entire matrix" shows "that 'sudden and accidental' does not have only one meaning as a matter of law . . . ." *Id.* ¶ 66

(Vigil, J., dissenting).

**{13}** "New Mexico law . . . allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity." *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). This general principle of New Mexico contract law has been reaffirmed in the specific context of insurance coverage disputes. *See, e.g.*, *Ponder*, 2000-NMSC-033, ¶ 13 (interpreting provisions of an automobile insurance policy and noting that "[i]n abandoning reliance only on the four-corners approach, courts are now allowed to consider extrinsic evidence in determining whether an ambiguity exists in the first instance, or to resolve any ambiguities that a court may discover"); *see also, e.g.*, *Mesa Oil*, 123 F.3d at 1340-41 ("New Mexico courts generally allow a party to introduce extrinsic evidence of a[n insurance] contract's meaning to determine whether an ambiguity exists and how that ambiguity should be resolved."). Therefore, we consider extrinsic evidence to help evaluate whether the term "sudden," as used in the Policies' pollution exclusion, is ambiguous.

## B.    Interpreting the Word "Sudden"

### 1.    Relevant Policy Terms

**{14}** The Policies' general coverage forms provide that Allstate will defend and indemnify United Nuclear for "damages on account of . . . Property Damage . . . caused by or arising out of each Occurrence . . . ." The Policies define an "Occurrence" as "an accident, event or happening including continuous or repeated exposure to conditions which results, during the policy period, in . . . Property Damage . . . neither expected nor intended from the standpoint of the Insured. . . . All such . . . Property Damage . . . caused by one event or by continuous or repeated exposure to substantially the same conditions shall be deemed to result from one Occurrence."

**{15}** The Policies do not apply to every conceivable incident of property damage; they contain various exclusions, including the pollution exclusion at issue here which bars coverage for property damage "arising out of the discharge, dispersal, release or escape of . . . toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but th[e] exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*" (Emphasis added).[1] The Policies' pollution exclusion is a boilerplate form that once was widely used in the liability insurance industry. *See, e.g.*, *Century Indem. Co. v. Liberty Mut. Ins. Co.*, 708 F. Supp. 2d 202, 206 (D.R.I. 2010); *City of Northglenn v. Chevron U.S.A., Inc*., 634 F. Supp. 217, 223 (D. Colo. 1986). Although wording of the pollution exclusion may vary slightly from policy to policy, numerous courts in other jurisdictions

---

[1] One of the four policies in question (the 1980-81 Policy), has a slightly different version of the exclusion, providing that coverage does not apply if the discharge "is both sudden and accidental."

6

have considered functionally identical language from policies issued by dozens of different insurers. *See, e.g.*, *State v. Allstate Ins. Co.*, 201 P.3d 1147, 1153 (Cal. 2009) (discussing insurance policies with identical pollution exclusions to the Policies at issue in this appeal); *Textron, Inc. v. Aetna Cas. & Sur. Co.*, 754 A.2d 742, 744 (R.I. 2000) (same). As an exception to an exclusion, the "sudden and accidental" clause acts as a restoration of coverage under the conditions specified and therefore should be construed broadly in favor of the insured as if the exclusion did not exist. *See Allstate Ins. Co.*, 201 P.3d at 1154; *see also Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1295 (Alaska 1994) ("Grants of coverage should be construed broadly while exclusions are interpreted narrowly." (citation and internal quotation marks omitted)).

### 2. Sources for the Possible Meaning of "Sudden"

#### a. Other Provisions in the Policies

**{16}** Our inquiry begins with the other relevant terms of the Policies. *See Rummel*, 1997-NMSC-041, ¶ 20 ("[W]e will first look to whether [a disputed term's] meaning and intent is explained by other parts of the policy."). Insurance policy terms "cannot be analyzed in a vacuum," and a policy "must be construed in its entirety, with each clause interpreted in relation to others contained therein." 2 Plitt, *supra*, § 21:19, at 21-76 to 21-80. The Policies do not provide any definition for the word "sudden" or for the phrase "sudden and accidental." Although far from dispositive, the lack of a definition in a policy may be one indication of ambiguity. *See Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 855 P.2d 1263, 1270 (Cal. 1993).

**{17}** United Nuclear presents both persuasive and unpersuasive arguments for the proposition that the Policies contain other language that inherently contradicts Allstate's preferred meaning of the word "sudden." One of the four Policies (the 1978-79 Policy), contains an endorsement, or modification, that alters coverage to exclude property damage caused by "*seepage*, pollution or contamination" unless the discharge "is caused by accident and results in property damage," or subsequent to the discharge, "an accident ensues which causes property damage." (Emphasis added). To the extent an endorsement conflicts with the terms of the main coverage forms, the policy will be deemed ambiguous. *See Ivy Nelson Grain Co. v. Commercial Union Ins. Co. of N.Y.*, 80 N.M. 224, 226, 453 P.2d 587, 589 (1969). If Allstate were correct that "sudden" is equivalent to "abrupt," the 1978-79 Policy's coverage of damages caused by "seepage" would be in conflict with the language of the pollution exclusion, because "seepage" indicates a gradual rather than an abrupt process. *See Queen City Farms, Inc. v. Cent. Nat'l. Ins. Co. of Omaha*, 827 P.2d 1024, 1049 (Wash. Ct. App. 1992) (noting that one policy in question covered "leakage" and another policy covered "seepage," and that both of these words "generally connote a gradual process"), *aff'd Queen City Farms*, 882 P.2d 703 (Wash. 1991); *accord City of Northglenn*, 634 F. Supp. at 222. This specific endorsement is found in only one of the four Policies, however, and therefore does not aid United Nuclear in establishing an ambiguity in the other three Policies.

**{18}**     United Nuclear also attempts to establish an inconsistency between the pollution exclusion clause and the promise in the Policies' general 'insuring agreement' to provide coverage for damages or claims arising from occurrences "including *continuous or repeated exposure* to conditions which results . . . in . . . Property Damage . . . neither expected nor intended from the standpoint of the Insured." (Emphasis added). United Nuclear's argument that this language is inconsistent with defining "sudden" within the pollution exclusion as requiring abruptness or a short duration is not persuasive. An exclusion does not conflict with an insurance policy's insuring agreement simply because it affords less or different coverage as compared with what the policy would provide without the exclusion; that is the very purpose of an exclusion, to restrict the scope of the policy beyond what would otherwise be covered. *See Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 129, 49 Cal. Rptr. 2d 567, 572 (Ct. App. 1996) (A "policy must be read as a whole and it cannot be said that an exclusion is in 'conflict' with an insuring clause. The very purpose of an exclusion is to withdraw coverage which, but for the exclusion, would otherwise exist."). We now look to evidence outside of the Policies to evaluate whether the word "sudden" as used therein is ambiguous.

### b.     Dictionary Definitions

**{19}**     When a term is undefined in the policy, a reviewing court "may look to that term's 'usual, ordinary, and popular' meaning, such as found in a dictionary." *Davis v. Farmers Ins. Co. of Ariz.*, 2006-NMCA-099, ¶ 7, 140 N.M. 249, 142 P.3d 17 (quoting *Battishill*, 2006-NMSC-004, ¶ 8); *see also Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 619 (Colo. 1999) (noting that "it is . . . appropriate [for courts] to rely on dictionary definitions of undefined terms used in an insurance contract"). Courts routinely refer to dictionaries for aid in assessing the meaning of undefined terms in insurance policies. *See, e.g.*, *Estate of Galloway v. Guar. Income Life Ins. Co.*, 104 N.M. 627, 628, 725 P.2d 827, 828 (1986) (Court referenced dictionary in interpreting meaning of insurance policy term "suicide."); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897-98 (Pa. 2006) (Pennsylvania Supreme Court consulted dictionary where relevant policy did not provide definition for term "accident."); *Builders Mut. Ins. Co. v. Parallel Design & Dev. LLC*, 785 F. Supp. 2d 535, 546-47 (E.D. Va. 2011) (District court first looked to "reputable dictionaries" for guidance as to meaning of term "pollutant" where policy failed to define the term.); *Kratz v. Kratz*, 905 P.2d 753, 755 (Okla. 1995) (consulting Black's Law Dictionary to define "benefit" in the context of an insurance policy).

**{20}**     Although "the mere existence of multiple dictionary definitions of a word, without more," does not create an ambiguity, *Citation Ins. Co. v. Gomez*, 688 N.E.2d 951, 953 (Mass. 1998), dictionary definitions "can serve as an appropriate starting point for analysis." *United Nuclear*, 2011-NMCA-039, ¶ 58 (Vigil, J., dissenting); *see also Vegas v. Compania Anonima Venezolana de Navegacion*, 720 F.2d 629, 631 (11th Cir. 1983) (acknowledging that dictionary definitions "provide at least a starting point in th[e] inquiry.").

**{21}**     Dictionaries define "sudden" as either synonymous with "unexpected," or as the

8

temporal descriptor of a brief occurrence, or both. Webster's Third New International Dictionary defines sudden as "unexpected," "to come up, occur unexpectedly," "happening without previous notice or with very brief notice," and "not foreseen or prepared for," which do not necessarily convey a temporal meaning; as well as "characterized by or manifesting hastiness," and "characterized by swift action," which do convey a temporal meaning. Webster's Third New International Dictionary 2284 (1993). Black's Law Dictionary defines "sudden" as "[h]appening without previous notice or with very brief notice; coming or occurring unexpectedly; unforeseen; unprepared for." Black's Law Dictionary 1432 (6th ed. 1990). While "[h]appening with . . . very brief notice" may connote a temporal limitation, "occurring unexpectedly" does not. Similarly, another standard dictionary gives primary meanings of "sudden" as "[1] [h]appening or coming without warning; [2] unexpected, unforeseen; [3] abrupt, hasty," the first two of which do not necessarily include a temporal element and the third of which does. 2 Shorter Oxford English Dictionary 3131 (5th ed. 2002). The Court of Appeals did not explain its preference for one set of these definitions over the other, but simply concluded that "the word 'sudden' . . . ordinarily means: quick, abrupt, or a temporarily short period of time." *United Nuclear*, 2011-NMCA-039, ¶ 20. The only support for that conclusion derives from *Mesa Oil*, which we discuss below. Allstate offers no arguments here as to why, where numerous sources indicate that there are multiple commonplace definitions for the word "sudden," most of those definitions should be disregarded.

**{22}** The Rhode Island Supreme Court considered the competing definitions of "sudden" to demonstrate the ambiguity of the term:

> Giving the word "sudden" its "plain everyday meaning" is no easy task. Both sides muster dictionary support of their respective positions, half of which accord a temporal meaning to the word and the other half of which give it the meaning of unexpected. This diversity proves only that the word's meaning is legitimately subject to different interpretations - in other words, that it is ambiguous.

*Textron*, 754 A.2d at 748; *see also id.* at 748 n. 1; *accord Just v. Land Reclamation, Ltd.*, 456 N.W.2d 570, 573 (Wis. 1990) ("The very fact that recognized dictionaries differ on the primary definition of 'sudden' is evidence in and of itself that the term is ambiguous.").

**{23}** Other courts, while not relying quite so heavily on dictionaries, nonetheless have found the conceptually distinct definitions of "sudden" to render the term ambiguous. *See St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.*, 923 P.2d 1200, 1217 (Or. 1996) (citing Webster's Third New Internat'l Dictionary, Oregon Supreme Court determined that "'sudden' *may* have, but *need not* always have, a temporal element"); *Queen City Farms*, 882 P.2d at 727 ("There is . . . wide recognition that various dictionaries define the word 'sudden' both as 'unexpected,' and in terms connoting a temporal idea of abrupt, instantaneous, short in duration, or the like.").

### c.     Divergence of Opinion Among Courts

**{24}**     Perhaps more consequential than the fact that "sudden" has multiple definitions in the abstract is the split among other courts that have considered the issue in similar insurance coverage disputes.  While it is true that "[a] split in legal authority may be indicative of an ambiguity in the policy, [it] does not establish one."  *Davis*, 2006-NMCA-099, ¶ 7.  Courts from around the country "have divided nearly evenly on the meaning of 'sudden,'" with "[n]early half" concluding that the term is ambiguous.  *Va. Prop., Inc. v. Home Ins. Co.*, 74 F.3d 1131, 1134 (11th Cir. 1996) (applying Georgia law to define "sudden" as "unexpected").  The Rhode Island Supreme Court similarly found "no clear majority among state or federal courts concerning whether this word entails a temporal element.  Both sides claim to hold the majority view, but the numbers are close enough that any slight preponderance of one position over the other is not particularly meaningful."  *Textron*, 754 A.2d at 748 (internal punctuation omitted).[2]

**{25}**     The Tenth Circuit opinion relied upon by the district court and Court of Appeals in the present case, *Mesa Oil*,123 F.3d 1333, determined that "sudden" is unambiguous for two reasons.   First, contrary to this Court's observations, *Mesa Oil* notes that "the trend in this area is to read 'sudden and accidental' as requiring that [the] pollution must occur quickly and abruptly . . . ."  *Id.* at 1339 (citing *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1525-30 (10th Cir. 1995)); *contra Textron*, 754 A.2d at 748 (noting that there is "no clear majority" among courts on whether "sudden" is ambiguous, although "[b]oth sides claim to hold the majority view").

**{26}**     The second basis for the Tenth Circuit's determination is that "the word 'sudden' would be superfluous if it did not impose a temporal requirement on the exemption."  *Mesa*

---

[2] States whose high courts have found the term "sudden" to be ambiguous include Colorado, Georgia, Illinois, Oregon, South Carolina, Washington, and Wisconsin.  *See, e.g.*, *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083 (Colo. 1991); *Claussen v. Aetna Cas. & Sur. Co.*, 380 S.E.2d 686 (Ga. 1989); *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204 (Ill. 1992); *St. Paul Fire & Marine Ins. Co.*, 923 P.2d 1200; *Greenville County v. Ins. Reserve Fund*, 443 S.E.2d 552 (S.C. 1994); *Queen City Farms*, 882 P.2d 703; *Just*, 456 N.W.2d 570.

States whose high courts have held the term "sudden" to be unambiguous include Florida, Massachusetts, Michigan, Nebraska, Oklahoma, South Dakota, and Utah.  *See, e.g.*, *Dimmitt Chevrolet, Inc. v. Se. Fid. Ins. Corp.*, 636 So. 2d 700 (Fla. 1993); *Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc*., 555 N.E.2d 568 (Mass. 1990); *Upjohn Co. v. N.H. Ins. Co.*, 476 N.W.2d 392 (Mich. 1991); *Dutton-Lainson Co. v. Cont'l Ins. Co.*, 716 N.W.2d 87 (Neb. 2006); *Kerr-McGee Corp. v. Admiral Ins. Co.*, 905 P.2d 760 (Okla. 1995); *Demaray v. De Smet Farm Mut. Ins. Co.*, 801 N.W.2d 284 (S.D. 2011); *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127 (Utah 1997).

*Oil*, 123 F.3d at 1339; *accord Dimmitt Chevrolet*, 636 So. 2d at 704; *N. Ins. Co. of. N.Y. v. Aardvark Assocs., Inc.*, 942 F.2d 189, 192 (3d Cir. 1991). We disagree that defining "sudden" as "unexpected" would automatically render the term redundant with "accidental." While "accidental" may be defined as "unexpected," *see* Black's Law Dictionary, *supra*, at 16, it has just as plausibly been defined as "occurring unintentionally," *see* The American Heritage Dictionary of the English Language 11 (4th ed. 2000); *see also Hecla Mining Co.*, 811 P.2d at 1092. Even if the terms "sudden" and "accidental" are "partially coextensive, . . . insurance policies routinely use words that, while not strictly redundant, are somewhat synonymous." *Hudson v. Farm Family Mut. Ins. Co.*, 697 A.2d 501, 504 (N.H. 1997) (internal quotation marks, citation, and alterations omitted); *see also Hatco Corp. v. W.R. Grace & Co.—Conn.*, 801 F. Supp. 1334, 1350, 1350 n.7 (D.N.J. 1992) (finding the phrase "sudden and accidental" ambiguous because "it is equally plausible that the phrase was meant as a string of terms of similar meaning, a practice routinely engaged in by drafters of insurance contracts," and noting that insurance policies are replete with synonymous terms, discussing by way of example that "[t]he difference, if any, between 'happening' and 'event' escapes recognition").

**{27}** Numerous courts finding ambiguity in the phrase "sudden and accidental" have interpreted the term to mean "unexpected and unintended"—two words that, while conceptually related, are not identical in meaning. *See, e.g.*, *Queen City Farms*, 882 P.2d at 721 (noting that interpreting "sudden" as "unexpected" does not render policy language duplicative because "'accidental' has independent effect as 'unintended'"); *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 821 (Colo. 2004) (interpreting the phrase "sudden and accidental' as meaning 'unexpected and unintended'") (quoting *Hecla Mining*, 811 P.2d at 1091-92).

**{28}** Even assuming, arguendo, that defining "sudden" as "unexpected" renders the term superfluous, this fact alone does not preclude our holding the term to be ambiguous. New Mexico's public policy of protecting the reasonable expectations of insureds, *see Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶ 25, 135 N.M. 681, 92 P.3d 1255, should take precedence over rescuing an insurer from redundancies in its own policy, *cf. Wis. Realtors Ass'n, Inc. v. Town of West Point*, 747 N.W.2d 681, 685 (Wis. Ct. App. 2008) (noting that interpreting statutory terms to avoid redundancy "is only one rule of . . . construction[, and] is not absolute."). *Mesa Oil*'s holding that "sudden" clearly means "abrupt" was premised on two assumptions we view to be erroneous, and thus provided inadequate support for the district court's and the Court of Appeals' reliance on that case.

**{29}** Many courts have reasonably concluded, both inside and outside of the insurance context, that such a lack of interpretive consensus is itself an indicator of ambiguity. *See Greenville*, 443 S.E.2d at 553 (S.C. 1994) ("That different courts have construed the language of an insurance policy differently is some indication of ambiguity."); *Bankwest v. Fid. & Deposit Co. of Md.*, 63 F.3d 974, 978 (10th Cir. 1995) ("The fact that judicial opinions have interpreted identical policy provisions differently may demonstrate ambiguity."); *see also Salazar v. Butterball, LLC*, 644 F.3d 1130, 1137 (10th Cir. 2011) (The

court concluded that the disputed term was ambiguous in part because of the "differing interpretations of several courts" and a federal agency.); *INS v. Errico*, 385 U.S. 214, 218 (1966) ("The sharp divergence of opinion among . . . judges . . . indicates that the meaning of the words 'otherwise admissible' is not obvious."). We do not resolve this appeal simply by tallying reported decisions that have addressed the issue before. However, the conspicuous division among courts on the meaning of the term "sudden" is another indication that the term may be reasonably susceptible to two distinct interpretations.

### d.     Industry Practice and Drafting History

**{30}**     United Nuclear urges this Court to consider the "custom and usage" of the phrase "sudden and accidental" within the insurance industry, arguing that prior use of the term in other kinds of insurance policies supports "a non-temporal construction." United Nuclear similarly asks the Court to consider the drafting history of the pollution exclusion, arguing that documentation from the drafting process supports the understanding that the pollution exclusion was intended to only disallow coverage for deliberate pollution.

**{31}**     In support of its argument, United Nuclear points to court decisions involving boiler and machinery insurance policies, which are policies that insure losses or breakdowns to equipment and fixtures. Boiler and machinery policies had employed the term "sudden" within the policies prior to use of the term's use in the pollution exclusion context. *See Ala. Plating Co. v. U.S. Fid. & Guar. Co.*, 690 So.2d 331, 336 (Ala. 1996). In cases addressing coverage under such policies, some courts have interpreted "sudden" to mean "unexpected." *See Anderson & Middleton Lumber Co. v. Lumbermen's Mut. Cas. Co.*, 333 P.2d 938, 941 (Wash. 1959) ("We do not so construe the word 'sudden,' when its primary meaning, in common usage, is not 'instantaneous' but rather 'unforeseen and unexpected.'"). Several courts have relied on the interpretation of "sudden" in decisions involving boiler and machinery policies in order to construe "sudden" as it appears within the pollution exclusion. For example, in *Queen City Farms*, the Washington Supreme Court reasoned that, in the boiler and machinery context, the risk to insurer is the same regardless of "whether a break is instantaneous or began with a crack which developed over a period of time," and concluded that defining "sudden" as "instantaneous" would be inconsequential. 882 P.2d at 720 (citing *Anderson*, 333 P.2d at 940-41). The court then by extension held "sudden" to mean "unforseen and unexpected" rather than "instantaneous" within a pollution exclusion clause. *Id.* at 720.

**{32}**     More recent decisions analyzing "sudden and accidental" in the context of other types of insurance policies are also instructive. For instance, the New Hampshire Supreme Court found "sudden and accidental" to be ambiguous in a 'special farm package policy' that provided coverage for, among other events, "[s]udden and [a]ccidental [d]amage from [a]rtific[i]ally [g]enerated [e]lectrical [c]urrent." *Hudson*, 697 A.2d at 504. In doing so, the court relied in part on dictionaries and an insurance treatise which appeared to favor a definition of "sudden" as "unexpected." *Id.* ("[T]he term 'sudden and accidental' is at least reasonably susceptible to an interpretation consistent with 'unexpected and unintended.'").

12

In litigation involving homeowners' insurance policies, a federal district court applying Louisiana law defined "sudden and accidental" as "an event which is either abrupt (though expected), or unexpected," and which "occur[s] from an unknown cause or [is] an unusual result of a known cause." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 759 F. Supp. 2d 822, 834 (E.D. La. 2010) (internal quotation marks and citation omitted). Thus, varying interpretations of "sudden" from cases considering other types of insurance, while not governing the outcome here, cast doubt on Allstate's assertion that there is a single obvious meaning to the term.

**{33}** Turning to the drafting history of the pollution exclusion, "[a]round 1970," United Nuclear asserts, "the insurance industry 'tacked' the pollution exclusion onto general liability policies as a way to distance insurers 'in the public mind from deliberate polluters.'" United Nuclear contends that documents from the policy drafting process show "the insurance industry expected the exclusion merely *to clarify* the industry's intention to exclude pollution events that are expected or intended . . . ." The propriety and necessity of considering drafting history in evaluating the meaning of the term "sudden" has featured prominently in prior decisions. Our Court of Appeals, however, deemed it unnecessary to do so in this case because "[t]he hypothetical reasonable insured with limited knowledge of insurance law would understand the word 'sudden' to mean what it ordinarily means: quick, abrupt, or a temporarily short period of time." *United Nuclear*, 2011-NMCA-039, ¶ 20. We do not conclude, as did the Court of Appeals, that "sudden" has only one reasonable meaning. Moreover, unlike the Court of Appeals we view the consideration of extrinsic evidence as important to the initial determination of whether an ambiguity exists in the insurance policy. *See generally Ponder*, 2000-NMSC-033, ¶ 13.

**{34}** The crux of United Nuclear's argument with respect to drafting history is that the insurance industry sought regulatory approval for the pollution exclusion without being required to reduce premiums by reassuring state regulators that the exclusion was merely a clarification, rather than a limitation, of coverage. Allstate offers two substantive arguments in response. First, it contends that the drafting history "concerns alleged representations only by third parties . . . . Neither [United Nuclear] nor Allstate participated in either the drafting or the approval of the form language." The purpose of exploring the drafting history of the pollution exclusion, however, is not to demonstrate Allstate's participation in the drafting of the pollution exclusion or even its assent to other insurers' representations, but rather to show that the term acquired a particular meaning as the pollution exclusion worked its way through the regulatory approval process. *See generally Queen City Farms*, 882 P.2d at 721, 722 ("[I]nsurance industry statements examined by [prior] courts may be considered insofar as they represent a reasonable construction of the ambiguous policy language.").

**{35}** Second, Allstate asserts that a reasonable insured would not be apprised of the intricacies of the insurance industry's common trade practices, and therefore such information should not be considered. This argument contradicts the policy rationale underlying the "reasonable expectations" standard and the ultimate resolution of ambiguities in favor of the insured. As we have established, a reviewing court may use extrinsic

13

evidence to answer the preliminary question of whether the language of an insurance agreement is clear on its face. *See Mark V*, 114 N.M. at 781, 845 P.2d at 1235. Then, after the resolution of this preliminary question, the court resolves the question of whether a reasonable person would or could interpret the agreement differently. *Id.* Due to the inherent power imbalances previously discussed, we construe any resulting ambiguities in favor of the insured. *See generally Ponder*, 2000-NMSC-033, ¶ 26. The purpose of the "reasonable expectations" doctrine is not to restrict a court from considering relevant sources in interpreting a policy term, but rather to protect the insured from disclaimers based on information that is hyper-technical, obscure, or hidden. *See Fed. Ins. Co. v. Century Fed. Sav. & Loan Ass'n*, 113 N.M. 162, 169, 824 P.2d 302, 309 (1992) (focusing the reasonable expectations inquiry on "protecting the one for whose benefits premiums have been paid for insurance coverage") (internal quotation marks and citation omitted); *Thompson v. Occidental Life Ins. Co. of Cal.*, 90 N.M. 620, 626, 567 P.2d 62, 68 (Ct. App. 1977) ("The doctrine of 'reasonable expectations' is an equitable approach" which allows a court to read a policy to "yield the maximum of protection to, and the reasonable expectation of, the insured" to prevent the insurer from "tak[ing] an unconscionable advantage.") (Sutin, J., concurring in part and dissenting in part); *Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 278 (Minn. 1985) (applying reasonable expectations doctrine to prevent insurer from denying coverage on the basis of a "technical definition" that was "hidden" in the policy); *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 690 (W.D. Pa. 2008) ("[T]he 'reasonable expectations' doctrine is intended to protect against the inherent danger, created by the nature of the insurance industry, that an insurer will agree to certain coverage when receiving the insured's application, and then unilaterally change those terms when it later issues a policy.") (internal quotation marks and citation omitted).

**{36}** As the dissent to the Court of Appeals' opinion recognizes, "[t]he events leading up to the creation of the pollution exception by the insurance industry are 'well-documented and relatively uncontroverted.'" *United Nuclear*, 2011-NMCA-039, ¶ 40 (Vigil, J., dissenting) (quoting *Morton Int'l, Inc. v. Gen. Accident Ins. Co. of Am.*, 629 A.2d 831, 848 (N.J. 1993)). Many courts from around the country have examined the drafting history of this exclusion to decode the intended scope of the clause, and have concluded that the insurance industry introduced the clause merely to clarify its stance on intentional pollution, not to substantively change the coverage itself. *See, e.g.*, *Textron*, 754 A.2d at 752 ("Our examination of the pollution-exclusion clause's drafting history . . . suggests that its original purpose–at least as the industry represented it to regulators–was to deny coverage to reckless or intentional polluters."); *Queen City Farms*, 882 P.2d at 721-22 ("As reported in published decisions, representations were made to state insurance regulators that the pollution exclusion was intended to exclude coverage for intentional polluters and clarify the occurrence clause."); *Joy Techs., Inc. v. Liberty Mut. Ins. Co.*, 421 S.E.2d 493, 499 (W. Va. 1992) ("In this Court's view, the insurance industry thus represented to the State of West Virginia, acting through the West Virginia Commissioner of Insurance, that the exclusion which is in issue in the present case merely clarified the pre-existing 'occurrence' clause."). Allstate insists that we should ignore the drafting history of the pollution exclusion because United Nuclear did not introduce evidence of that history in an admissible form before the trial court. This argument

14

misses the point of our, and other courts', reference to that history. Interpreting an ambiguous term in an insurance policy is a question of law, *see Richardson v. Farmers Ins. Co.*, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991), and we need not blind ourselves to prior judicial exploration of the origins of the language employed in the exclusion in the course of addressing the identical interpretive question that we confront here.

**{37}** Judge Vigil's dissent viewed the industry's proferred meaning of the pollution exclusion during the drafting and approval process to be in tension with the meaning that Allstate urges, as do we. *See United Nuclear*, 2011-NMCA-039, ¶ 48 (Vigil, J., dissenting) ("I do not agree that insurance companies can represent to regulators that they intend a phrase to mean one thing in a policy when they seek its approval, then assert that it means something else when a claim is subsequently filed."). Although a review of the origins of the pollution exclusion does not by itself determine ambiguity, that history provides another indication that the word "sudden" in the phrase "sudden and accidental" did not then, and does not now, bear a single obvious meaning. *See id.* ¶ 50 (Vigil, J., dissenting).

## III.   CONCLUSION

**{38}** The absence of a definition of the term in the Policies, taken together with diverging definitions in standard dictionaries and the lack of any consensus among courts nationwide, we hold that the meaning of the term "sudden" as used in the Policies is ambiguous. In recognizing the inherent imbalance of the two parties to an insurance contract—that often times "language in standard policies does not involve mutual negotiations between the insurers and the insureds"—we must resolve such ambiguities against the insurer. *Queen City Farms*, 882 P.2d at 721. "Where exceptions to or limitations upon coverage are concerned, this principle applies with added force." *Id.*

**{39}** Typically, the determination that a term in an insurance policy is ambiguous is "a matter of law rather than a factual determination." *Rummel*, 1997-NMSC-041, ¶ 19. Where facts relating to the term at issue are in dispute, or where a credibility determination is required, an ambiguity may be remanded to the trier of fact for resolution. *See, e.g., Ellingwood v. N.N. Investors Life Ins. Co.*, 111 N.M. 301, 305, 307-08, 805 P.2d 70, 74, 76-77 (1991). Where there are no disputed material facts, however, courts routinely view construction of a term in an insurance policy "as purely a question of law and construe[] any ambiguities" in the insured's favor. *Allstate Ins. Co. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 575 (2009); *see also Clarendon Nat'l Ins. Co. v. Ins. Co. of the West*, 442 F. Supp. 2d 914, 922 (E.D. Cal. 2006) ("Unless it turns on the credibility of conflicting extrinsic evidence or on underlying facts that are in dispute, the interpretation of an insurance policy is solely a question of law.") Here the parties do not disagree about any facts material to the interpretation of the term "sudden," but only dispute the significance of those facts. We hold, therefore, as a matter of law that the term "sudden," in the Policies' pollution exclusion, means "unexpected," rather than indicating a temporal limitation on the occurrence. Our holding does not necessarily mean that United Nuclear is entitled to coverage under the Policies. United Nuclear must still prove that its operations led to

discharges that were in fact "sudden and accidental," and Allstate may have other policy defenses to coverage not raised in its summary judgment motion and this appeal. We reverse the Court of Appeals' grant of summary judgment to Allstate, and remand the case to the district court for further proceedings consistent with this Opinion.

**{40}   IT IS SO ORDERED.**

_____

**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Chief Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for _United Nuclear Corp. v. Allstate Insurance Co._, No. 32,939**

**APPEAL AND ERROR**
Standard of Review

**CONTRACT**
Ambiguous Contracts

**EVIDENCE**
Extrinsic Evidence

**INSURANCE**
Exclusion Clause
Indemnity
Insurance Contract

**NATURAL RESOURCES**
Mines and Minerals
Pollution