This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36987**

**GOLDEN SERVICES HOME
HEALTH AND HOSPICE and
UNNAMED NURSING AND
REHABILITATION CENTER,**

>   Protestants-Appellees,

v.

**TAXATION AND REVENUE
DEPARTMENT OF THE STATE
OF NEW MEXICO,**

>   Respondent-Appellant,

**IN THE MATTER OF THE PROTEST
TO ASSESSMENT ISSUED UNDER
LETTER ID NO. L1636159024,**

**and**

**IN THE MATTER OF THE PROTEST TO
DENIAL OF REFUND ISSUED UNDER
LETTER ID NO. L0609102128.**

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE**
**Dee Dee Hoxie and Chris Romero, Hearing Officers**

Martin, Dugan & Martin
W.T. Martin, Jr.
Kenneth D. Dugan
Carlsbad, NM

for Appellee Golden Services Home Health and Hospice

Sutin, Thayer & Browne, P.C.
Suzanne W. Bruckner
Andrew J. Simons
Albuquerque, NM

for Appellee Unnamed Nursing and Rehabilitation Center

Hector H. Balderas, Attorney General
David E. Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}**     The New Mexico Taxation and Revenue Department (the Department) appeals from two orders by administrative hearing officers (AHO), each finding that Taxpayers Golden Services Home Health and Hospice and Unnamed Nursing and Rehabilitation Center (collectively, Taxpayers), respectively, were entitled to a deduction under NMSA 1978, Section 7-9-93 (2007, amended 2016). *In the Matter of the Protest of Golden Services*, No 17-50, 2017 WL 6729674, *7, (Dec. 20, 2017) (dec. & order). This consolidated appeal presents a question of first impression: whether certain health care facilities[1] like Taxpayers—facilities that provide hospice, rehabilitative, or other such services—are entitled to a deduction from the gross receipts tax for qualifying payments under Section 7-9-93.[2] Concluding they are not, we reverse the AHOs' decisions in both protests.

## BACKGROUND

**{2}**     The underlying protests at issue in this appeal were initiated by Taxpayers in separate administrative proceedings. We set forth the relevant backgrounds of each case and relevant history of the statute's interpretation.

### Golden Services Home Health and Hospice

---

[1]For the purposes of clarity and consistency, we use the term "health care facilities" found in 3.2.241.13 NMAC and 3.2.241.17 NMAC, defined as "an HMO, hospital, hospice, nursing home, an entity that is solely an outpatient facility or intermediate care facility under the Public Health Act," in place of the term "institutions" used by the parties in their briefing.

[2]Unless otherwise indicated, all references to Section 7-9-93 refer to the 2007 version of the statute. In 2016, Section 7-9-93 was amended to clarify the application of the provision in this circumstance, providing that only "receipts of a health care practitioner" for qualifying payments are entitled to a deduction. Section 7-9-93(A) (2016).

**{3}** Golden Services is a health care facility that provides hospice services performed by health care practitioners. In November 2016, Golden Services filed a protest in the administrative hearings office after the Department denied their claims for a deduction for the tax periods from January 2009 to December 2014. Nine months later, Golden Services filed a motion for summary judgment, and the parties agreed that there were no disputed issues of material fact, and that the dispositive legal question was whether Golden Services was entitled to a deduction under Section 7-9-93.

**{4}** On December 20, 2017, the AHO granted summary judgment in favor of Golden Services, finding that the statute was "not ambiguous" and that "any taxpayer who had receipts of qualifying payments [could] take the deduction." The AHO therefore concluded that Golden Services was entitled to claim the deductions, pursuant to Section 7-9-93. Although the Department had enacted regulations 3.2.241.13 NMAC[3] and 3.2.241.17 NMAC[4] in 2006, which expressly disallowed health care facilities from claiming the deduction, the AHO reasoned that the regulations "were void as they attempted to abridge or modify the statute as it was written." The AHO's decision and order also determined that Golden Services "would not be entitled to [a] deduction" under the current version of Section 7-9-93 (2016). Specifically, the AHO found that the "subsequent [2016] amendment of the statue was a substantive change in the law, and the change does not apply retroactively." The Department appealed the AHO's decision and order (the summary judgment order).

## Unnamed Nursing and Rehabilitation Center

**{5}** Unnamed Nursing is a nursing and rehabilitation facility that also protested the Department's denial of its claim for a deduction under Section 7-9-93 for the tax periods from January 2015 to May 2016. The Department filed a motion for partial judgment on Unnamed Nursing's protest in May 2017. In its order denying the Department's motion, a different AHO determined that Section 7-9-93 is "clear and unambiguous" and that the Legislature did not intend to exclude Unnamed Nursing or other health care facilities from claiming the deduction.[5] Moreover, after evaluating the legislative history of the

---

[3]Regulation 3.2.241.13 NMAC provides that "[a] corporation, unincorporated business association, or other legal entity may deduct under Section 7-9-93 . . . its receipts from managed health care providers or health care insurers for commercial contract services or [M]edicare part C services provided on its behalf by health care practitioners who own or are employed by the corporation, unincorporated business association or other legal entity [if it] is not: [1] an organization described by Subsection A of [NMSA 1978,] Section 7-9-29 [(1990)]; or [2] an HMO, hospital, hospice, nursing home, an entity that is solely an outpatient facility or intermediate care facility licensed under the Public Health Act."

[4] Regulation 3.2.241.17 NMAC provides that, "[a]n organization, whether or not owned exclusively by health care practitioners, licensed as a hospital, hospice, nursing home, an entity that is solely an outpatient facility or intermediate care facility under the Public Health Act is not a "health care practitioner" as defined by Section 7-9-93[.] Receipts of such an organization are not deductible under Section 7-9-93[.]"

[5]Despite the lack of a final order, Unnamed Nursing's protest is properly before this Court because the statutory scheme establishing the procedure for judicial review of the agency decisions does not expressly require finality. *See Johnson & Johnson v. N.M. Taxation & Revenue Dep't*, 1997-NMCA-030, ¶ 10, 123 N.M. 190, 936 P.2d 872 (holding that "where the statutory requirements do not expressly require finality in agency decisions, there is no requirement of finality" (internal quotation marks and citation omitted)).

statute, the AHO concluded that the 2016 amendment to Section 7-9-93 did not warrant retroactive application. The Department appeals the AHO's order denying the Department's motion for partial judgment (the partial judgment order).

**Evolution of Section 7-9-93**

**{6}**    Section 7-9-93 was originally enacted in 2004, at which time, the Department permitted health care facilities to apply for the deduction. *See FYI-202 Gross Receipts Tax & Health Care Services NEW* (8/04), page 5 (providing general examples where a health maintenance organization (HMO) and hospital were permitted to deduct payments from services provided by a health care practitioner), available at https://www.nmchiro.org/articles/FYI-202HealthServicesDeduction083104.pdf. Following the statute's amendment in 2006, the Department enacted regulations prohibiting health care facilities from claiming the deduction. *See* § 7-9-93(B)(3)(o), (p) (2006); 3.2.241.13 NMAC and 3.2.241.17 NMAC. The Legislature again slightly amended the statute in 2007, but it was a minor addition to Section 7-9-93(B)'s definition of a health care practitioner. In 2016, the AHO in *HealthSouth Rehabilitation*, interpreted Section 7-9-93 to permit health care facilities to take the deduction, concluding that the Department's 2006 change in regulations was in error. No 16-16, 2016 WL 2958471, **5, 7 (May 11, 2016) (dec. & order). Taxpayers claim that they are eligible for the deduction in reliance on the administrative decision in *HealthSouth Rehabilitation. Id.*

**DISCUSSION**

**{7}**    On appeal, the Department makes several arguments in support of its contention that health care facilities are not entitled to the deduction in Section 7-9-93: (1) the AHOs in both protests, failed to properly apply the plain meaning rule given the statute's ambiguity, and the Taxpayers' right to a deduction is not clearly set out in the statute; (2) the legislative intent of the statute, as ascertained through canons of statutory construction, indicates that health care facilities are not entitled to the deduction; and (3) the 2016 amendment to the statute clarified the legislative intent as originally enacted to reflect that the deduction is limited to individual health care practitioners, and therefore should be applied retroactively.

**Standard of Review**

**{8}**    Since the issue presented is one of statutory interpretation regarding the meaning of the version of Section 7-9-93 in effect at the time, we review the AHOs' decisions de novo. *A&W Restaurants, Inc. v. Taxation & Revenue Dep't*, 2018-NMCA-069, ¶ 6, 429 P.3d 976 ("The meaning of language used in a statute is a question of law that we review de novo." (internal quotation marks and citation omitted)), *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-37272, Oct. 26, 2018). While we are not bound by either AHO's interpretation of the statue, this Court will only set aside an AHO's decision if the decision is: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law."

NMSA 1978, § 7-1-25(C) (1989); *Stockton v. N.M. Taxation & Revenue Dep't*, 2007-NMCA-071, ¶ 8, 141 N.M. 860, 161 P.3d 905; *see N.M. Mining Assn. v. N.M. Water Quality Control Comm.*, 2007-NMCA-010, ¶ 11, 141 N.M. 41, 150 P.3d 991 ("We are not bound by an agency's interpretation of a statute, since it is a matter of law that is reviewed de novo.").

**Applicable Rules of Statutory Construction**

**{9}** "Our primary goal [in statutory interpretation] is to give effect to the intent of the Legislature." *Sacred Garden, Inc. v. N.M Taxation & Revenue Dep't*, 2020-NMCA-___, ¶ 5, ___ P.3d ___ (No. A-1-CA-37142, Jan. 28, 2020) (alteration, internal quotation marks, and citation omitted). "We discern legislative intent by first looking at the plain meaning of the language of the statute, reading the provisions together to produce a harmonious whole." *Id.* (omission, internal quotation marks, and citation omitted). Additionally, we may "consider the statute's history and background." *Valenzuela v. Snyder*, 2014-NMCA-061, ¶ 16, 326 P.3d 1120 (internal quotation marks and citation omitted). "But where the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others." *State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 3, 117 N.M. 346, 871 P.2d 1352 (internal quotation marks and citation omitted).

**Applicable Presumptions**

**{10}** "There is a presumption that all persons engaging in business in New Mexico are subject to the gross receipts tax." *TPL, Inc. v. N.M. Taxation & Revenue Dep't*, 2003-NMSC-007, ¶ 9, 133 N.M. 447, 64 P.3d 474; *see also* NMSA 1978, § 7-9-5(A) (2002) ("To prevent evasion of the gross receipts tax and to aid in its administration, it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax."). As such, "deductions are construed strictly against the taxpayer" and "[t]he right to a deduction must be clearly and unambiguously expressed in the statute." *TPL, Inc.*, 2003-NMSC-007, ¶ 9. The taxpayer bears the burden of proving its eligibility for the deduction. *Id.* ¶ 31. Nevertheless, "[a] tax statute must also be given a fair, unbiased, and reasonable construction, without favor or prejudice to either the taxpayer or the [s]tate, to the end that the legislative intent is effectuated and the public interests to be subserved thereby are furthered." *Wing Pawn Shop v. N.M. Taxation & Revenue Dep't*, 1991-NMCA-024, ¶ 16, 111 N.M. 735, 809 P.2d 649 (internal quotation marks and citation omitted).

**{11}** As well, there is a presumption that the "assessment of taxes or demand for payment made by the [D]epartment is . . . correct." NMSA 1978, § 7-1-17(C) (1992). In addition, since the Department has the authority to enact regulations that interpret statutes, those regulations carry a presumption that they are a "proper implementation of the provisions of the laws." NMSA 1978, § 9-11-6.2(G) (1995); *Chevron U.S.A., Inc. v. State of N.M. ex rel. Taxation & Revenue Dep't*, 2006-NMCA-050, ¶ 16, 139 N.M.

498, 134 P.3d 785 ("Agency regulations that interpret statutes and are promulgated under statutory authority are presumed proper[.]").

**Taxpayers Did Not Qualify for Section 7-9-93's Deduction**

**{12}**    At issue in this case is whether the statutory deduction set forth in Section 7-9-93(A) is available to health care facilities like Taxpayers, as the AHOs found in this case, or instead, is only available to health care practitioners, as the Department contends. The statutory deduction at issue in this case, Section 7-9-93(A), provides:

> A.      *Receipts* from payments by a managed health care provider or health care insurer for commercial contract *services* or [M]edicare part C *services provided by a health care practitioner* that are not otherwise deductible pursuant to another provision of the Gross Receipts and Compensating Tax Act may be deducted from gross receipts, provided that the services are within the scope of practice of the person providing the service. Receipts from fee-for-service payments by a health care insurer may not be deducted from gross receipts. The deduction provided by this section shall be separately stated by the taxpayer.

(emphasis added) (citation omitted). To determine Taxpayers' entitlement to the deduction, we first examine the statutory language to ascertain whether its plain meaning is clear and unambiguous. *City of Santa Fe ex rel. Santa Fe Police Dep't v. One (1) Black 2006 Jeep*, 2012-NMCA-027, ¶ 7, 286 P.3d 1223.

**{13}**    The AHO in Golden Services' protest interpreted the statute to mean that "[t]he deduction [must be] based on receipts from payments by managed health care providers or from health care insurers, [and] those payments [must meet] certain conditions. The required conditions were (1) the payments were for commercial contract services or [M]edicare part C services; (2) the payments were for services provided by a health care practitioner; (3) the payments were not otherwise deductible; and (4) the payments were for services within the scope of practice of the health care practitioner who provided the service." *Golden Services*, No 17-50, 2017 WL 6729674, *4 (citations omitted). In reaching the same conclusion regarding Taxpayer Unnamed Nursing's protest, the second AHO further elaborated upon its conclusion by stating that the caution expressed in *Gallegos* against the literal application of statutory language was inapplicable because the AHO did not "*first* [find] that Section 7-9-93 . . . [was] vague or ambiguous or that its literal application would lead to any absurdity[;]" and instead found the statute to be "clear and unambiguous as written." *See* 1994-NMSC-023, ¶ 23 ("[C]ourts must exercise caution in applying the plain meaning rule. Its beguiling simplicity may mask a host of reasons why a statute, apparently clear and unambiguous on its face, may for one reason or another give rise to legitimate . . . differences of opinion concerning the statute's meaning."). We disagree that the statute was clear and unambiguous as written and thus conclude that both AHOs' interpretations were not in accordance with law.

**{14}** While at first blush the AHOs' interpretations suggest a valid reading of the statute, we perceive ambiguity in the structure and wording of the statute. Our contrary conclusion regarding the statute's ambiguity is rooted in the question of whether the phrase "provided by a health care practitioner" (the phrase) in the statute relates to the term "receipts" or to the term "services." For instance, if the phrase refers to "receipts," the language of the statute then clarifies that the deduction is limited and available only to health care practitioners—certain licensed individuals providing health care services who are expressly identified and defined within Section 7-9-93(B)(3). On the other hand, if the phrase refers to "services" provided by a health care practitioner, the statute's language leaves unspecified *who* is entitled to claim the deduction for those services, and arguably any taxpayer with receipts of qualifying payments may then be entitled to claim the deduction, as the AHO concluded.

**{15}** Notably, if we assume the phrase refers to "services" provided by a health care practitioner, in line with the AHOs' interpretation, the Legislature's later statement within the same statutory subsection that "services [must be] within the scope of practice of the [health care practitioner]" is redundant. Section 7-9-93(A). However, redundancy alone cannot be dispositive as to statutory meaning. *See United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 28, 285 P.3d 644 (noting that interpreting statutory terms to avoid redundancy is one rule of construction, though not absolute). Thus, because it remains unclear, despite the apparent possible redundancy, whether the phrase refers to "receipts" or "services," the statutory terminology is susceptible to different constructions, and therefore, we must turn to other indicia of legislative intent such as the statute's purpose and legislative history. *Renzenberger, Inc. v. N.M. Taxation & Revenue Dep't*, 2018-NMCA-010, ¶ 7, 409 P.3d 922 ("If there is an ambiguity or a lack of clarity, we will turn to other aspects of statutory construction, including the purpose of the statute and its legislative history.").

**{16}** Consistent with the AHO's ruling in Unnamed Nursing's protest, Taxpayers claim that the term "taxpayer" in the last sentence of Section 7-9-93(A) (stating "[t]he deduction provided by this section shall be separately stated by the taxpayer"), is indicative of the Legislature's intent to broadly apply the deduction to *any* taxpayer. This construction is also consistent with a reading that the deduction is applicable to services provided by a health care practitioner, and not merely receipts of health care practitioners. In reviewing the statute as a whole, however, we are unpersuaded as the term "taxpayer" refers to *whomever* is entitled to claim the deduction in light of the context provided in the preceding sentences. *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 15, 309 P.3d 1047 ("In interpreting statutes, we should read the entire statute as a whole so that each provision may be considered in relation to every other part." (internal quotation marks and citation omitted)). Consequently, we do not consider the single term "taxpayer" to here to resolve the question of legislative intent.

**{17}** Because of our view that the language of the statute is ambiguous given its absence of clarity as to whether the deduction is available for "services" provided by a health care practitioner or "receipts" provided by a health care practitioner, we next evaluate the statute's history and background to ascertain the Legislature's purpose for

enacting the deduction. *See Eldridge v. Circle K Corp.*, 1997-NMCA-022, ¶ 29, 123 N.M. 145, 934 P.2d 1074 ("[W]e must harmonize the statutory language to achieve the overall legislative purpose."). In doing so, we may consider "other" sources, including "contemporaneous documents presented to and presumably considered by the [L]egislature during the course of enactment of a statute." *Gallegos*, 1994-NMSC-023, ¶ 35 ("[W]e see no reason why *contemporaneous* documents, presented to and presumably considered by the [L]egislature during the course of enactment of a statute, may not be considered by a court in attempting to glean legislative intent."); *Mira Consulting, Inc. v. Bd. of Educ., Albuquerque Pub. Sch.*, 2017-NMCA-009, ¶ 6, 389 P.3d 306 ("[T]he plain meaning rule must yield on occasion to an intention otherwise discerned in terms of equity, legislative history, or *other sources.*" (emphasis added) (internal quotation marks and citation omitted)).

## 2004 Enactment of Section 7-9-93 Deduction

**{18}** Section 7-9-93 was first introduced during the 2004 legislative session as House Bill 625 (H.B. 625).[6] The Fiscal Impact Report (FIR) associated with the measure specified that H.B. 625 "[p]rovides a deduction for *receipts of licensed health practitioners* from payments by a managed care provider" and repeatedly referred to the deduction as the "health practitioners deduction." (Emphasis added.)[7] *See Helmerich & Payne Int'l Drilling Co. v. N.M. Taxation & Revenue Dep't*, 2019-NMCA-054, ¶ 12, 448 P.3d 1126 (relying partially on the related FIR in evaluating whether a taxpayer was a "prevailing party" under the relevant statute). The FIR for H.B. 625 further elaborated that the partial "impetus behind proposals to provide deductions or exemptions to health care practitioners stems from the fact that some health plans [refused] to pay the passed-on tax" thereby placing an economic strain on New Mexico's healthcare sector since most states do not tax health care practitioner's services. FIR, _supra,_ at 4-5. While we will not construe FIRs as a conclusive indicator of legislative intent, we note that FIRs are part of the documents "actually submitted to and considered by the [L]egislature or legislative committees in connection with enactment of the legislation and [informing the Legislature of] any significant fiscal impact[,]" and we are permitted to consider *contemporaneous* documents in determining legislative intent. *See Gallegos*, 1994-NMSC-023, ¶¶ 15, 35.

## 2006 Amendment to Section 7-9-93

**{19}** In 2006 Section 7-9-93 was amended solely to expand the definition of "health care practitioners" to include certain "licensed" health care professionals. *Compare* Section 7-9-93(B)(3) (2004), *with* Section 7-9-93(B)(3)(o), (p) (2006). The FIR associated with House Bill 325 (H.B. 325) in 2006 specifically noted that the bill

---

[6]H.B. 625, 46th Leg., 2nd Sess., 8 (N.M. 2004), available at https://www.nmlegis.gov/Sessions/04%20Regular/final/HB0625.pdf.
[7]Fiscal Impact Report for H.B. 625, *Food and Medical Services Gross Receipts*, at 2-3 (Feb. 15, 2004), available at https://www.nmlegis.gov/Sessions/04%20Regular/firs/HB0625.pdf

"expands the list of health practitioners who receive a gross receipts tax deduction[.]"[8] Notably, the purpose of amending the statute was also clearly announced in the amendment of H.B. 325's title ("Relating to Taxation; Permitting Certain Licensed Counselors, Therapists and Social Workers *To Deduct* From Gross Receipts Certain Payments From Managed Health Care Providers" (emphasis added)).[9] *See* N.M. Const. art. IV, § 16 ("The subject of every bill shall be clearly expressed in its title[.]"). While also not dispositive of legislative intent, the title may aid in construing a statute to resolve existing doubts or ambiguities as to the statutory meanings *if* the title is in the enrolled and engrossed bill. NMSA 1978, § 12-2A-13 (1997) ("Headings and titles may not be used in construing a statute or rule unless they are contained in the enrolled and engrossed bill or rule as adopted."); *see Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 18, 289 P.3d 1232 ("[T]he title of a statute may be used as an aid to construe the statute even though it is not dispositive on the issue of legislative intent. A statute's title may be used only to resolve existing doubts or ambiguities as to the statutory meanings and not to create ambiguity where none existed." (omission, internal quotation marks, and citation omitted)); *Black's Law Dictionary* (11th ed. 2019) (defining "engrossed bill" as "[a] bill in a form ready for final passage by a legislative chamber" and an "enrolled bill" as "[a] bill passed by both houses of the legislature and signed by their presiding officers"). Here, H.B. 325 met the enrolled and engrossed requirements for use in statutory construction, and therefore we may consider its title in understanding legislative intent. *D'Antonio*, 2012-NMSC-039, ¶ 19.

**2006 Department Regulations**

**{20}** From Section 7-9-93's enactment in 2004 through 2006, the Department permitted health care facilities such as Taxpayers to claim the deduction. *See FYI-202 Gross Receipts Tax and Health Care Services*, 5 *NEW* (8/04), available at https://www.nmchiro.org/articles/FYI-202HealthServicesDeduction083104.pdf (providing general examples where a HMO and hospital were permitted to deduct payments from services provided by a health care practitioner). However, following the 2006 statutory amendment, the Department promulgated new regulations that disqualified health care facilities, including HMOs, hospitals, and Taxpayers here, from claiming the deduction. *See* 3.2.241.13 NMAC and 3.2.241.17 NMAC. The AHO and Taxpayers place significant weight on this policy change, claiming that the new regulations were improper and not in line with the statutory language, and therefore, the Department acted outside of its authority because no material change in the statute justified the shift in policy. *See HealthSouth Rehabilitation*, No 16-16, 2016 WL 2958471, **5, 7. We disagree.

**{21}** First, the Department's regulations carry a presumption that they are a "proper implementation of the provisions of the laws." Section 9-11-6.2(B)(1), (G). Second,

---

[8] Fiscal Impact Report for H.B.325, *Counselor & Therapist Payment Gross Receipts*, at 1 (Jan. 30, 2006), available at https://www.nmlegis.gov/Sessions/06%20Regular/firs/HB0325.pdf.

[9] H.B. 325, 47th Leg., 2nd Sess., 1, 4 (N.M. 2006), available at https://www.nmlegis.gov/Sessions/06%20Regular/final/HB0325.pdf.

when considering H.B. 325's title specification—namely, that the 2006 amendment provided deductions for certain health care professionals—in tandem with the fact that the only material changes in the statute were to the definition of "health care practitioners," it is apparent that the amendment illuminated the legislative intent of the statute, thereby clarifying the previous ambiguity which allowed it to be construed incorrectly. *See Alexander v. Anderson*, 1999-NMCA-021, ¶ 20, 126 N.M. 632, 973 P.2d 884 (noting that an agency may correct its mistakes where grounded in a mistaken legal impression). Indeed, no language associated with the 2006 legislation, its amendments, its fiscal impact reports, or any other source suggests the changed regulation to be inconsistent with the Legislature. Accordingly, neither the AHOs nor we have any basis to conclude that the Department's new regulations were an improper interpretation of the statute to a degree necessary to override their presumptively propriety.

## 2007 Amendment to Section 7-9-93

**{22}** In 2007, the Legislature again amended the statute and once again expanded the definition of "health care practitioner." *Compare* Section 7-9-93 (B)(3) (2006), *with* Section 7-9-93(B)(3)(q). Similar to the prior amendment, the title of the relevant bill, House Bill 638 (H.B. 638) ("Relating to Taxation; Providing Gross Receipts Tax Deductions for Certain Health Care Providers") stated that the deduction was for certain health care providers.[10] The FIR associated with H.B. 638 also referred to the deduction as the "health practitioner deduction" and elaborated upon the economic rationale behind the deduction.[11] Specifically, the FIR noted that New Mexico struggles with the recruitment and retention of health care providers and that the 2004 deduction was meant to address the shortage of health care labor and remove the disincentive of a gross receipts tax from certain New Mexico health care practitioners because their counterparts in other states do not pay a similar tax. *See* FIR, H.B. 638, *supra,* at 9.

**{23}** We reiterate once more that our primary purpose in statutory interpretation is to give effect to the Legislature's intent. *Sacred Garden, Inc.*, 2020-NMCA-___, 2020 WL 468342, ¶ 2. As well, tax exemptions and deductions "are a matter of legislative grace and a way of achieving policy objectives" and are to be "construed against the taxpayer." *Sutin, Thayer & Browne v. N.M. Taxation & Revenue Dep't*, 1985-NMCA-047, ¶ 17, 104 N.M. 633, 725 P.2d 833; *Murphy v. N.M. Taxation & Revenue Dep't*, 1979-NMCA-065, ¶ 20, 94 N.M. 90, 607 P.2d 628. It is the taxpayer's burden to establish that it is entitled to a given deduction. *TPL, Inc.*, 2003-NMSC-007, ¶ 31.

**{24}** While neither the title of the bills nor the FIRs *alone* are dispositive on the issue of legislative intent, they are part of a consistent message appearing throughout the legislative process and the Department's regulations that the deduction was intended to apply to health care practitioners. In contrast, the AHOs' and Taxpayers' interpretation of the statute conflicts with the legislative purpose for enacting the deduction, and for

---

[10]H.B. 638, 48th Leg., 1st Sess., 1, 14 (N.M. 2007), available at https://www.nmlegis.gov/Sessions/07%20Regular/final/HB0638.pdf.

[11]Fiscal Impact Report for H.B. 638, *Health Care Provider Gross Receipts*, 3, 6, 8-9 (Feb. 13, 2007 & March 15, 2007), available at https://www.nmlegis.gov/Sessions/07%20Regular/firs/HB0638.pdf.

this reason, we cannot conclude that their interpretation reflects legislative intent. *See Baker*, 2013-NMSC-043, ¶ 15. Given the FIRs and the bill titles, the Department's presumptively correct regulations, Taxpayers' burden to establish its entitlement to the deduction, and most importantly, the possible interpretation of the statute's language itself that the deduction is limited only to health care practitioners, we conclude that, Taxpayers, as health care facilities, and not individual practitioners, are not entitled to claim the deduction.

**{25}** As further support of our conclusion, we note that the Legislature defined "commercial contract services" in the statute to require services be performed "pursuant to a contract" between *a health care practitioner* and a managed health care provider or insurer. Section 7-9-93(B)(1). Similarly, "health care insurer" is also defined as a person that "contracts to reimburse licensed *health care practitioners* for providing basic health care services[.]" Section 7-9-93(B)(2)(b). Such specificity requiring a contract with a "health care practitioner" lends support to the conclusion that only health care practitioners could hold qualifying "receipts from payments by a managed health care provider or health care insurer." Section 7-9-93(A).

**{26}** Lastly, we observe that the Legislature further elaborated upon its intent as to this very topic by amending Section 7-9-93, effective November 1, 2016. The amendment qualified the deduction as applicable only to receipts of a health care practitioner. *See* § 7-9-93 (2016). This clarification—which notably excluded health care facilities—finalizes once and for all that the Legislature does not intend to bestow a tax deduction to simply "any taxpayer" and thus non-practitioner transactions do not fall within the purview of Section 7-9-93 (2016). While neither dispositive here nor retroactively applicable to prior transactions, the recent amendment clarifies current legislative intent in a manner that supports our analysis and conclusion herein.

**{27}** Because the right to claim a deduction for receipts from health care facilities is not clearly and unambiguously expressed in Section 7-9-93 (2007), we conclude it is inapplicable to Taxpayers, and reverse the AHOs' contrary determinations.

**Stare Decisis and Collateral Estoppel Do Not Bar the Department's Appeal**

**{28}** Golden Services alternatively argues that we may affirm the AHO's decision based on the principles of stare decisis and collateral estoppel because the Department did not appeal from *HealthSouth Rehabilitation*, the earlier administrative decision where the AHO first concluded that health care facilities were entitled to the deduction under Section 7-9-93. No 16-16, 2016 WL 2958471, *7. We disagree.

**{29}** The AHO correctly intuited, contrary to Golden Services' contentions on appeal, that neither principles of stare decisis and collateral estoppel are applicable to this case. *Golden Services*, No 17-50, 2017 WL 6729674, *3. Administrative decisions of the administrative hearings office do not carry the weight of precedence and therefore stare decisis, the doctrine regarding the application of precedent, is inapplicable. *See Hess Corp. v. N.M. Taxation & Revenue Dep't*, 2011-NMCA-043, ¶ 35, 149 N.M. 527, 252

P.3d 751 (noting that an unpublished opinion is written solely for the benefit of the parties and is not controlling precedent). Golden Services argues that the Department may not depart from "its own hearing officers' prior determinations," failing to recognize that the Department and the administrative hearings office are independent state agencies, each with its own statutorily delegated duties. *See* NMSA 1978, § 9-11-4 (2005); NMSA 1978, § 7-1B-2 (2015). In support of its argument, Golden Services cites to *Bass Enterprises Production Co. v. Mosaic Potash Carlsbad Inc.* for the proposition that "an agency is not free to *arbitrarily* disregard its own . . . prior decisions." 2010-NMCA-065, ¶ 20, 148 N.M. 516, 238 P.3d 885 (emphasis added). While an agency may not arbitrarily disregard its own prior decisions, it may correct its mistakes grounded in a mistaken legal impression. *See Alexander*, 1999-NMCA-021, ¶ 20. Notably, Golden Services cites no authority for the proposition that an agency's failure to pursue an appeal in one protest amounts to acquiescence by the Department as to all future protests even when the earlier decision was based on a misapprehension of the law. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (stating that where a party cites no authority to support an argument, we may assume no such authority exists); *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). Although we consider this argument no further, we note as well that we are not bound by the AHO's erroneous interpretation of the statute in *HealthSouth Rehabilitation* any more than we are in the present protests, particularly given that our analysis revealed that such interpretation was not in accordance with the law.

**CONCLUSION**

**{30}** For the foregoing reasons, we reverse the AHOs' grant of Taxpayers' protests.

**{31}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**I CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge (specially concurring).**

**IVES, Judge (specially concurring).**

**{32}** I see this as a close case in which the following principles tip the scales in favor of reversal. "A statutory presumption exists that all of a person's receipts are subject to the gross receipts tax[,]" and "the taxpayer has the burden of overcoming this presumption." *ITT Educ. Servs., Inc. v. N.M. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 5, 125 N.M. 244, 959 P.2d 969; *see* § 7-9-5(A)  ("To prevent evasion of the gross receipts tax and to aid in its administration, it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax."). "[D]eductions are

construed strictly against the taxpayer[,]" and "[t]he right to a deduction must be clearly and unambiguously expressed in the statute." *TPL, Inc.*, 2003-NMSC-007, ¶ 9 (citation omitted). The burden is on the taxpayer to "show that it is clearly entitled to [a] statutory deduction." *Id.* Because I do not think Taxpayers have established that Section 7-9-93 clearly and unambiguously expresses that institutions have a right to the deduction, I concur in the result. I offer this separate opinion to explain my analysis, beginning with the distinctions between my esteemed colleagues' reasoning and my own.

**{33}** Unlike the majority, I do not believe the phrase "provided by a health care practitioner" in Section 7-9-93 gives rise to any ambiguity, much less ambiguity with respect to *who* may take the deduction. The majority relies on two premises: (1) the phrase could modify "receipts" or "services" and (2) if the phrase modifies "receipts," the implication is that the Legislature intended to allow only health care practitioners to take the deduction, excluding institutions such as Taxpayers. I disagree with both.

**{34}** As to the first premise, I do not think the phrase "provided by a health care practitioner" renders the statute ambiguous. I believe the plain meaning of the pertinent language and the structure of the statute make clear that the phrase "provided by a health care practitioner" modifies the term that immediately precedes it: "[M]edicare part C services." The Legislature chose to put the words "services provided by a health care practitioner" together, and those words naturally function as a single phrase in this context. This interpretation is grammatically correct and, more importantly, makes sense substantively because health care practitioners are the people who *provide* the services for which receipts are deductible. That conclusion flows directly from the structure of Section 7-9-93. Subsection (A) of the statute provides that payments for both "commercial contract services" and "[M]edicare part C services" are deductible. Subsection (B)(1) defines "commercial contract services," in relevant part, as "health care services performed by a healthcare practitioner." The phrase "provided by a health care practitioner" in Subsection (A) fits neatly into this framework by clarifying that the Medicare part C services for which receipts are deductible are subject to a similar requirement.

**{35}** The statute would be ambiguous if it was subject to a reasonable alternative interpretation, but the majority does not offer one. *See generally State v. Elmquist*, 1992-NMCA-119, ¶ 5, 114 N.M. 551, 844 P.2d 131 ("A statute is ambiguous when it can [reasonably] be understood . . . in two or more different senses."). In support of its conclusion that the statute is ambiguous, the majority asserts that the phrase "provided by health care practitioners" could plausibly modify "receipts," but it does not explain what receipts *provided by* a health care practitioner could mean in this context. Under the majority's alternative interpretation of the statute, it is unclear to me, for example, to whom the practitioners would provide the receipts—the money paid for services that the practitioners performed. *See generally* NMSA 1978, § 7-9-3.5(A)(1) (2007) (" '[G]ross receipts' means the total amount of money or the value of other consideration received from selling property in New Mexico, from leasing or licensing property employed in New Mexico, from granting a right to use a franchise employed in New Mexico, from selling services performed outside New Mexico, the product of which is initially used in

New Mexico, or from performing services in New Mexico."). Without the benefit of an explanation of the substantive meaning of the alternative interpretation my colleagues identify, I cannot join them in concluding that the statute is ambiguous.

**{36}** Even if I were to conclude that the statute can plausibly be read to describe practitioners providing receipts, I would not agree with the majority's second premise. I do not see how the ambiguity that the majority perceives is pertinent to the question presented: *Who* may take the deduction? Under the majority's alternative interpretation, I imagine the practitioner would provide receipts (money) to the practitioner's employer or to a party with whom the practitioner has entered into a contractual relationship. But that reading of the statute would not necessarily preclude institutions such as Taxpayers from taking the deduction because it would explicitly limit only the *types* of receipts that are deductible. Only receipts provided by a health care practitioner would be subject to the deduction, but those receipts could be deducted by any institution that received the money paid for a practitioner's services. If an institution would otherwise be liable for the tax on such receipts, nothing in the statute would preclude that institution from deducting those receipts. So even under the majority's alternative reading, the plain language of the statute would only provide criteria for the types of receipts that qualify without saying anything about who has a right to deduct receipts that meet those criteria. This does nothing to "clarif[y] that the deduction is limited and available only to health care practitioners." Maj. Op. ¶ 15. As I see it, the majority's approach begs, rather than answers, the question presented.

**{37}** In attempting to answer that question, Taxpayers observe, as the hearing officers in their cases did, that the plain language of Section 7-9-93 neither explicitly limits the deduction to health care practitioners nor explicitly prohibits institutions from taking the deduction. I think that observation is accurate, but I reject the inference Taxpayers draw from it: that the Legislature intended to make the deduction available to institutions so long as the receipts in question meet all of the criteria set forth in the statute.[12] The primary problem with Taxpayers' position, as I see it, is that Section 7-9-93 does not clearly *allow* institutions to take the deduction.[13] [14] The statute is silent on the issue.

---

[12]Unnamed Nursing and Rehabilitation Center argues that the Legislature knew how to clearly limit the availability of deductions and exemptions to certain categories of taxpayers, as several other provisions of the tax code illustrate. *See, e.g.*, NMSA 1978, § 7-9-16 (1975) (exempting certain "receipts of nonprofit entities"); NMSA 1978, § 7-9-57.2(A) (2002) (providing deduction for certain "receipts of an eligible software development company"). Although the Legislature's use of a different grammatical structure in Section 7-9-93 provides some support for Taxpayers' interpretation, I do not feel confident inferring from that difference that Section 7-9-93 "clearly and unambiguously expresse[s]" that institutions have a right to the deduction. *TPL, Inc.*, 2003-NMSC-007, ¶ 9.

[13]Taxpayers also rely on the Legislature's inclusion of the word "taxpayer," which is broadly defined to include corporations, companies, and firms. *See* NMSA 1978, § 7-1-3(W) (2003) (defining "taxpayer" as "a person liable for payment of any tax"); § 7-1-3(O) (defining "person"). According to Taxpayers, the Legislature's choice of this word, rather than a more specific one such as "individuals" or "health care practitioners," manifests an intent to grant institutions the right to this deduction. I am not persuaded that the Legislature's diction clearly and unambiguously expresses such an intent. I think it is highly unlikely that the use of the word "taxpayer"—which encompasses, for example, "gas, water or electric utilit[ies] owned or operated by a county or municipality," Section 7-1-3(O)—was a deliberate legislative choice crafted to identify those who have a right to the deduction. Instead, the Legislature

When, as in this instance, a statute does "not declare the [L]egislature's intent, one way or the other[,]" we should be reluctant to draw inferences because "[l]egislative silence is at best a tenuous guide to determining legislative intent." *Swink v. Fingado*, 1993-NMSC-013, ¶ 29, 115 N.M. 275, 850 P.2d 978; *see also Wegner v. Hair Prods. of Texas*, 2005-NMCA-043, ¶ 7, 137 N.M. 328, 110 P.3d 544 ("Legislative silence is not a reliable indicator of intent."). Because Section 7-9-93 is silent about whether institutions have a right to the deduction, I conclude that the statutory language does not "clearly and unambiguously express[]" such a right. *TPL, Inc.*, 2003-NMSC-007, ¶ 9.

**{38}**    Having concluded that the text of Section 7-9-93 is silent on the issue, I am unsure if we may search beyond the statutory text for some expression of the Legislature's intent to extend the deduction to institutions. Our Supreme Court has stated that the right to a deduction must be "expressed *in* the statute" and that a taxpayer demanding a deduction must show that that demand "is within the letter as well as the spirit of the law." *TPL, Inc.*, 2003-NMSC-007, ¶¶ 9, 40 (emphasis added) (internal quotation marks and citation omitted). *But cf. Delfino v. Griffo*, 2011-NMSC-015, ¶¶ 12-14, 150 N.M. 97, 257 P.3d 917 (recognizing, outside of the tax deduction context, that when a statute is silent on a particular issue, appellate courts may seek to glean legislative intent from other sources, such as "the overall structure and function of the statute," public policy, and the statute's history). Assuming for the sake of discussion that we may resort to other indicia of legislative intent here, I do not see how Taxpayers can prevail. As the majority recognizes, the titles of the bills that amended the statute at issue, resulting in the 2007 version, indicate that the Legislature intended to limit the deduction to health care practitioners. Maj. Op. ¶¶ 20, 23. Thus, even if the silence in the statutory text was not fatal to Taxpayers' position, I would conclude the bills' titles are.

**{39}**    I would reverse for the reasons stated.

**ZACHARY A. IVES, Judge**

---

appears to have used "taxpayer" generically in a sentence that mandates the procedure for claiming the deduction.

[14]By contrast, the statute unambiguously indicates that the deduction may be claimed by health care practitioners. Section 7-9-93 permits the deduction of "receipts," which, as relevant, are the "amount of money or the value of other consideration received . . . from performing services in New Mexico." Section 7-9-3.5 (defining gross receipts). The only "services" referred to in the relevant portions of the statute are those "provided [or performed, Section 7-9-93(B)(1),] by a health care practitioner." Section 7-9-93(A). Because health care practitioners are the ones "performing" the services for which receipts are obtained, it necessarily follows that the Legislature intended to give them the ability to deduct those receipts.